**BURKHART REFRACTORY INSTALLATION,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (CHRIST),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 10, 2006.

Decided March 30, 2006.

Michael J. Crocenzi, Harrisburg, for petitioner.

Fred H. Hait, Harrisburg, for respondent.

Daniel K. Bricmont, Pittsburgh, for amicus curiae, Pennsylvania Trial Lawyers Association.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Burkhart Refractory Installation (Employer) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which affirmed as modified the decision of a Workers' Compensation Judge (WCJ) granting the Petition to Re-

view Compensation filed by Roy Christ (Claimant). We affirm.

Claimant's first day of work for Employer was March 8, 2002. Claimant began receiving benefits pursuant to a Temporary Notice of Compensation Payable (TNCP) for an injury that occurred on June 24, 2002. Thereafter, Employer filed a Petition to Review Compensation Benefits contending that the Average Weekly Wage (AWW) was incorrect. Also, Claimant filed a Petition alleging that the AWW in the TNCP is incorrect.

Oliver Harrison Burkhart, the president of Employer, testified before the WCJ. In his opinion, the WCJ summarized his testimony as follows:

1. . . . Sometimes the work is due to an emergency situation; and at other times, the work is purely maintenance that can be scheduled ahead of time. He stated the work is sporadic. He is familiar with the Claimant, who was hired in a laboring position with no specific number of work hours. He does not recall telling the Claimant the work was sporadic, but he admitted that he normally does communicate the off and on nature of work. He stated that the Claimant's work hours varied from week to week, just as all laborers did. Mr. Burkhart stated that the only workers that get fairly steady work would be the long-term foremen. He stated that work schedules are posted for one job only and that subsequent postings would be for a different job. Most of the time, the workers are on-call.

(WCJ's 9/21/2004 Decision, p. 2).

The WCJ granted the Petition to Review Compensation Benefits and determined that Claimant's AWW was $311.82. Claimant appealed to the Board, which determined that Claimant's AWW should be $454.17. The Board determined that a strict application of Section 309(d.2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(d.2), did not afford a determination that reflected economic reality because, although Claimant worked less than 13 weeks at the time of the injury, he did not have an expected number of weekly hours to work. Consequently, the Board determined that a permissible alternative must be used to calculate Claimant's AWW. Although Claimant was employed for 16 weeks, he only actually earned wages during 12 of those weeks. Accordingly, the Board arrived at an AWW by dividing Claimant's gross wages by 12. The Board based this decision on the Supreme Court case of *Hannaberry HVAC v. WCAB (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524 (2003), in which the Court held that "that subsection (d) does not control the calculation in a circumstance, such as this one, where it would lead to a grossly and demonstrably inaccurate measure of a worker's average weekly wage." *Id.* at 82–83, 834 A.2d at 534. Employer's appeal to this Court followed.

On appeal to this Court, Employer argues that Claimant was employed for at least one complete 13 week period and, pursuant to the Supreme Court's recent decision in *Reifsnyder v. WCAB (Dana Corporation),* 584 Pa. 341, 883 A.2d 537 (2005), Section 309(d.1) should be used to calculate the AWW.

Section 309 provides that:

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging

the total amounts earned during these three periods.

(d.1) If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

(d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582.

In *Hannaberry*, the claimant worked part-time for the employer while he was in high school and then, upon graduating from high school, he began working full-time. Shortly after he began working full-time, the claimant sustained a devastating injury to his spinal cord which rendered him a paraplegic. Employer contended that the claimant's AWW should be calculated based on his highest three quarters of employment in the previous year, two of which were periods of part-time employment. The claimant argued that including his part-time high school employment in the AWW calculation artificially decreased his wages. The WCJ agreed and calculated the claimant's AWW based only on his last calendar quarter of work. Employer appealed to the Board, which affirmed. Employer appealed to this Court, which reversed on the basis that the Act did not address nor make a distinction between part-time and full-time employment. As

such, we concluded that the calculation favored by the employer should be used. On appeal, the Supreme Court reversed and held that:

> Since Section 309 does not address the part-time to full-time paradigm presented here, and a reading of the statute as requiring dilution of the benefit would be contrary to the overall humanitarian purpose of the Act, resort to principles of statutory construction is appropriate. Those principles dictate that appellant's part-time wages not be permitted to dilute the benefit due to him as a result of an injury suffered after he became, and had been for some time, a full-time employee. Consideration of the "occasion and necessity" for the 1996 amendment, "the circumstances under which it was enacted," the mischief it sought to remedy, the object it sought to attain, and the former law, 1 Pa.C.S.1921(c)(1)-(5), all weigh in favor of calculating appellant's average weekly wage based upon his quarter of full-time employment.

*Hannaberry*, 575 Pa. at 81–82, 834 A.2d at 533.

The *Reifsnyder* case dealt with three claimants, all of whom were long-term employees of the employer and were subject to periodic layoffs during downturns in the employer's production cycle. The WCJ and the Board construed the Act as requiring that the periods of time when the claimants earned no wages due to layoffs be included in the calculation of their AWW pursuant to Section 309(d). On appeal to this Court, we stated that the issue before us was not whether the claimants were *employed* by Employer in the 52 weeks preceding their injuries. Rather, the issue was whether the claimants *worked* a complete 13 week period in the 52 weeks preceding their injuries. We reversed the Board because the layoffs created a situation where the claimant's "worked" less

than a single completed period of thirteen calendar weeks. Therefore, we concluded that Section 309(d.2) must be used to calculate the AWW. On appeal, the Supreme Court reversed and held that the periods of time during which the claimants received no wages due to periodic layoffs must be included in the calculation of the AWW. Specifically, the Supreme Court held that:

> The structure of the statute strongly indicates that subsection (d.2) was not intended to apply to employees, such as Claimants here, with long-term employment relationships with their employer, who happen to have been subject to layoffs. *Both (d) and (d.1) include lookback periods encompassing the preceding fifty-two weeks, in search of "completed" thirteen-week periods;* in contrast, subsection (d.2) has no such long-term focus, and indeed, it provides for a **prospective** calculation of potential earnings. By its terms, (d.2) contemplates persons for whom there is little work history with the employer upon which to calculate the AWW. Viewing the interrelationship of these subsections, we deem it unlikely in the extreme that the General Assembly intended (d.2) to supplant (d) or (d.1) anytime a long-term employment relationship happens to involve periods with a "work" cessation. Instead, *we conclude that subsection (d.2) was intended for instances that it plainly covers; i.e., those instances of work injuries to recently-hired employees for whom there was, by definition, no accurate measure of AWW other than taking the existing hourly wage and projecting forward on the basis of the hours of work expected under the employment agreement.*

*Reifsnyder,* 584 Pa. at 356–57, 883 A.2d at 546–547 (emphasis in underline added; emphasis in bold in original). In summary, it is evident that subsections (d) and

(d.1) apply to claimants with long-term employment relationships and subsection (d.2) applies to claimants with short-term employment relationships.

Employer states that, in this case, Claimant was employed for 16 weeks prior to his work injury but only earned wages during 12 of those sixteen weeks. Because there is absolutely no evidence that Claimant's employment relationship was severed during those 16 weeks, Employer argues that, pursuant to *Reifsnyder,* Section 309(d.1) should be used to calculate Claimant's AWW because he was employed for at least once complete 13 week period prior to his injury. We disagree.

As set forth in Exhibits D–2 and D–7, Claimant's wages were as follows:

| Pay Period | Wages |
| --- | --- |
| 3/3–3/9 | $ 88.00 |
| 3/10–3/16 | $1064.00 |
| 3/17–3/23 | $ 266.00 |
| 3/24–3/30 | $ 633.50 |
| 3/31–4/6 | $ 189.00 |
| 4/7–4/13 | $ 0.00 |
| 4/14–4/20 | $ 567.00 |
| 4/21–4/27 | $ 735.00 |
| 4/28–5/4 | $ 352.50 |
| 5/5–5/11 | $ 322.50 |
| 5/12–5/18 | $ 0.00 |
| 5/19–5/25 | $ 0.00 |
| 5/26–6/1 | $ 75.00 |
| 6/2–6–8 | $ 467.50 |
| 6/9–6/15 | $ 0 |
| 6/16–6/22 | $ 210.00 |

Pursuant to *Reifsnyder,* subsections (d) and (d.1) apply to long-term employees because they "look back" to the previous 52 weeks of employment. In contrast, (d.2) applies to recently hired employees because it "looks forward". Claimant in this case was not a long-term employee. Rather, he had only been working for 16 weeks at the time of his injury. Thus, we reject Employer's argument that subsection (d.1) would apply to Claimant because the Supreme Court in *Reifsnyder* specifically limited the application of (d.1) to long-term employees. Rather, as a re-

cently hired employee, we must next look to subsection (d.2), which provides that "the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment." Employer's President testified that Claimant's laboring position had no specific number of work hours. Therefore, (d.2) cannot be applied to him either. Pursuant to *Hannaberry*, in this situation an alternative calculation must be used to calculate Claimant's AWW. The Board's solution to this problem was to divide Claimant's gross wages by 12, which is the number of weeks he actually earned wages. Employer argues that the weeks where Claimant earned no wages should be included in this calculation and thus Claimant's gross wages should be divided by 16. We disagree with this approach. Including the weeks that Claimant earned no wages would be unfair because Claimant had just started working and he should not be penalized for sustaining a work injury close to a time when Employer did not have work available for him every week. Although Employer's President testified that work was sporadic, because Claimant does not have an extensive work history it is impossible to know whether or not four weeks without any work whatsoever is merely "sporadic" or whether this is unusual. However, while excluding the weeks where Claimant had no wages, the Board did include the weeks where Claimant's wages were comparatively very low, thus recognizing the sporadic nature of the number of work hours he received. We believe that this is a fair compromise in this situation. We also believe this approach is correct because, in accordance with *Hannaberry*, it fairly assesses Claimant's earnings when he was actually working and advances the humanitarian purpose of the Act. Furthermore, in accordance with *Reifsnyder*, it advances

the purpose of Section 309(d), which is to accurately capture economic reality when calculating the AWW.

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, March 30, 2006, the order of the Workers' Compensation Appeal Board docketed at A04–2464 is hereby AF-FIRMED.