# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Toigo Orchards, LLC and | : | |
| Nationwide Insurance Company, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 722 C.D. 2016 |
| | : | Argued: December 12, 2016 |
| Workers' Compensation Appeal | : | |
| Board (Gaffney), | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE COHN JUBELIRER                  FILED:  March 13, 2017

Toigo Orchards, LLC, and its insurer, Nationwide Insurance Company (together, Employer), petition for review from the April 13, 2016 Order of the Workers' Compensation Appeal Board (Board), modifying in part, and affirming otherwise, the Workers' Compensation Judge's (WCJ) July 14, 2015 Final Decision and Order that granted Earl Gaffney (Claimant) specific loss benefits for the loss of vision in his left eye. Because Claimant had been retired in Florida prior to being hired as a tractor driver to move bins during the apple-picking season, and returned to retirement in Florida after his injury, there are questions about whether he was a seasonal employee, for purposes of determining the correct average weekly wage (AWW), and whether he should be awarded a healing period. On appeal, Employer argues that the Board erred by: (1) reversing the

WCJ's determination that Claimant was a seasonal employee within the meaning of Section 309(e) of the Workers' Compensation Act (Act),[1] 77 P.S. § 582(e); (2) reversing and modifying the WCJ's calculation of Claimant's AWW as a seasonal employee pursuant to Section 309(e) of the Act; and (3) reversing the WCJ's decision to omit an award for a healing period pursuant to Section 306(c)(25) of the Act, 77 P.S. § 513(25). In addition, if the Court concludes that the WCJ properly classified Claimant as a seasonal employee, Claimant has asked whether his AWW should be calculated using the expected earnings provision of Section 309(d.2) of the Act, 77 P.S. § 582(d.2),[2] rather than using Section 309(e), because he had worked less than 13 weeks for Employer at the time of his injury. Upon review, we affirm in part and reverse in part.

## I.     BACKGROUND

### A.     *Proceedings before the WCJ*

On October 8, 2013, Claimant sustained a work-related injury while working for Employer. (Claim Petition, R.R. at 2a.) At the time of the injury, Claimant worked for Employer at the rate of $9.00 per hour and was hired to drive a tractor

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 582(e).

[2] Section 309(d.2) of the Act, added by the Act of June 24, 1996, P.L. 350, as amended, 77 P.S. § 582(d.2), provides, as follows:

> Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:
>
> * * *
>
> (d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

and move bins for apple pickers in the orchard. (Id. at 4a.) Employer issued a Notice of Temporary Compensation Payable to Claimant on October 29, 2013, and filed a Corrected Statement of Wages with the Bureau of Workers' Compensation on December 2, 2013, providing a wage calculation based on seasonal employment. (R.R. at 34a-35a.) The resulting AWW was determined to be $35.10 with a compensation rate of $31.59 per week. (Id. at 35a.) On January 3, 2014, Employer issued a Medical Only Notice of Compensation Payable to Claimant for an injury described as traumatic iridocyclitis with cystoid macular edema of the left eye. (Board Op. at 1.) Claimant filed a Claim Petition on July 1, 2014, seeking specific loss benefits for the loss of vision in his left eye, indicating that his injury caused him to stop working, and listing Claimant's job title as "Laborer." (R.R. at 3a-4a.) Employer filed an Answer denying all material allegations of Claimant's Petition. (Id. at 8a.)

A pre-trial hearing on the Claim Petition was held before the WCJ on July 29, 2014. (Hr'g Tr., July 29, 2014, R.R. at 38a.) A second hearing was held on December 10, 2014, at which the WCJ bifurcated the proceeding, to first decide Claimant's status and whether Claimant's AWW should be calculated as a seasonal employee, and second the medical issues. (Hr'g Tr., Dec. 10, 2014, R.R. at 52a, 122a.) Claimant's Counsel appeared, and Claimant testified via telephone. Employer appeared and offered the testimony of Jeremiah Calloway, a Federal Crew Chief. A number of documents were entered into evidence, including Claimant's paystubs and Mr. Calloway's Farm Labor Contractor Certificate of Registration.

3

Claimant testified as follows.[3] He started working for Employer at the beginning of September 2013 as a tractor driver and had previously worked for Employer about 30 years ago as an apple picker. He did not pick fruit for Employer, but moved bins for the apple pickers as they moved from tree to tree, and he did no other work on the farm. Claimant earned $9.00 per hour, his normal working hours were 7:00 a.m. to 5:00 p.m., and he worked five days a week, Monday through Friday. He was hired only for the apple season and was not promised more work by Mr. Calloway, a lifelong friend, who hired him. His eye injury occurred when a tree limb knocked his glasses off and scratched his eye as he was getting off of a tractor, he did not return to work afterwards, and he remained in Pennsylvania for approximately two weeks after his injury occurred before returning to Florida. He received Social Security retirement benefits in Florida for about six years prior to starting employment with Employer, and currently receives those benefits; his last job was six and a half years ago working at a chemical plant making fertilizer. Claimant stopped receiving Social Security retirement benefits while he worked for Employer, and when he returned to his home in Florida, he began receiving them again. There was another tractor driver who worked for Employer year-round.

Mr. Calloway testified as follows.[4] He was a Federal Crew Chief for Employer, registered under the Migrant and Seasonal Agricultural Worker Protection Act,[5] whose purpose he explained is to bring people from one state to the next to harvest crops, though he does not transport them. He hired Claimant,

---

[3] Claimant's testimony can be found on pages 60a-97a of the Reproduced Record.
[4] Mr. Calloway's testimony can be found on pages 97a-121a of the Reproduced Record.
[5] 29 U.S.C. §§ 1801-1872.

4

with whom he went to school, for the temporary job of driving a tractor around the orchard, not to pick apples. Claimant's job included hauling and moving people and bins around the orchard. Apple season lasts from September to November, and he did not promise Claimant work after the apple harvest was over. He and the other workers, including Claimant, did not work in the rain. Most of the time, Claimant did work 10-11 hours a day. Mr. Calloway also explained the duties of Employer's year-round tractor driver, which include spraying, taking care of the farm, computer duties, and, during the apple harvest, hauling apples out of the orchard. Mr. Calloway lived in Florida and hired crews only for Employer; when the harvest was over, he returned to Florida.

In an initial interlocutory order memorandum, the WCJ credited both Claimant's and Mr. Calloway's testimony and found that the job Claimant was hired to perform "was as an extra tractor driver during the apple harvest," and that the duration of employment was directly associated with the length of the apple picking season. (WCJ Interlocutory Order Memorandum at 4, Findings of Fact (FOF) ¶¶ 6-10.) The WCJ concluded that Claimant's employment as an "extra tractor driver during the apple harvest" was exclusively seasonal employment. (Id.) The WCJ further concluded that the Corrected Statement of Wages used the correct calculation. (Id., Conclusion of Law (COL) ¶ 1.) Thus, the WCJ granted the Claim Petition and ordered that Claimant's AWW be calculated based on the seasonal employment calculation used in the Corrected Statement of Wages. (WCJ Interlocutory Order.)

Upon request that a final decision and order be rendered, the WCJ subsequently issued a final order making the same findings of fact as the interlocutory order memorandum. (WCJ Final Decision and Order, FOF ¶¶ 12-

5

13.) The WCJ concluded that Claimant met his burden of establishing by sufficient, competent, and credible evidence that he sustained a work injury to his left eye on October 8, 2013, resulting in the total loss of use of his left eye for all intents and purposes. (Id., COL ¶ 1.) Accordingly, the WCJ awarded Claimant specific loss benefits of 275 weeks at $31.59 per week based upon an AWW of $35.10, for a total of $8,687.25, plus litigation costs to Claimant. (WCJ Final Order.)

### B. Proceedings before the Board

Claimant appealed the WCJ's Final Decision and Order to the Board, arguing first that the WCJ erred in finding that he was a seasonal worker. The Board concluded "that the WCJ erred by imposing too narrow a construction upon Claimant's employment," and that the inquiry should have focused "on the nature of the work, not the period during which the employer operates," pursuant to Froehly v. T.M. Harton Co., 139 A. 727 (Pa. 1927). (Board Op. at 6.) The Board characterized Claimant's employment as "itinerant agricultural labor," and, while it was intended to be temporary during the orchard's period of operation, short-term employment is not synonymous with seasonal occupation. (Id. at 7.) Accordingly, the Board held that Claimant's AWW had to be calculated using a different subsection of Section 309 of the Act.

Claimant next argued that Section 309(d.2) should be used to calculate his AWW because he worked less than 13 weeks and did not have fixed weekly wages, which would result in an AWW of $450.00 (50 hours multiplied by $9.00 per hour). The Board rejected this argument, concluding that a calculation under Section 309(d.2) does not achieve a fair assessment of Claimant's pre-injury

6

earnings, which are known. (Id. at 7-9.) The Board instead, relying on Burkhart Refractory Installation v. Workers' Compensation Appeal Board (Christ), 896 A.2d 9, 13 (Pa. Cmwlth. 2006), used an alternative calculation, which divided Claimant's total gross earnings by the weeks worked, which yielded an AWW of $351.00 ($1,755.00 divided by 5 weeks) and a benefit rate of $315.90.

The Board also concluded that the WCJ erred in not awarding benefits for a 10-week healing period pursuant to Section 306(c)(25) of the Act, 77 P.S. § 513(25), and that Claimant was entitled to the 10-week healing period provided for under the Act. (Board Op. at 9-10.) Accordingly, the Board modified the WCJ's order to reflect an award of 285 weeks of benefits at the rate of $315.90 per week, and otherwise affirmed the WCJ's order. (Board Order, Apr. 13, 2016.) Employer then petitioned this Court for review.[6]

### C.   Proceedings before this Court

On June 8, 2016, Employer filed an Application for Supersedeas on Appeal (Application), requesting that this Court grant a supersedeas as to the Board's April 13, 2016 Decision and Order, which modified the WCJ's award of benefits to 285 weeks of benefits at the rate of $315.90 per week. Claimant filed an Answer to the Application. After argument, a Memorandum Opinion and Order was filed on July 27, 2016. The opinion noted that "Employer properly filed the Application with

---

[6] "This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated[,] or [whether] an error of law was committed." Cytemp Specialty Steel v. Workers' Comp. Appeal Bd. (Crisman), 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). When reviewing questions of law, our review is plenary. Land O'Lakes, Inc. v. Workers' Comp. Appeal Bd. (Todd), 942 A.2d 933, 936 n.3 (Pa. Cmwlth. 2008).

7

this Court to preserve its right to seek reimbursement from the Supersedeas Fund." Toigo Orchards, LLC v. Workers' Comp. Appeal Bd. (Gaffney) (Pa. Cmwlth., No. 722 C.D. 2016, filed July 27, 2016), slip op. at 5 and n.2 (citing Mark v. Workers' Comp. Appeal Bd. (McCurdy), 894 A.2d 229, 233 (Pa. Cmwlth. 2006) (setting forth requirements an employer or insurer must meet in order to seek reimbursement from the Supersedeas Fund)). However, we denied Employer's Application because it had already paid all specific loss benefits to Claimant, and, as such, there was no irreparable injury to Employer. Id., slip op. at 5-6; see also Pa. Pub. Util. Comm'n v. Process Gas Consumers Grp., 467 A.2d 805, 808-09 (Pa. 1983) (setting forth the criteria an employer must meet to receive a supersedeas, one of which requires that irreparable injury must occur if the supersedeas is denied).

On July 12, 2016, Claimant filed a Designation of Additional Issue on Appeal (Designation), requesting that the Court consider whether his AWW should "have been calculated using the expected earnings provision of Section 309(d.2) of the . . . Act . . . where he had worked less than 13 weeks for . . . Employer at the time of his injury[.]" (Designation at 2.) Claimant alleges that although he raised the issue to both the WCJ and the Board, neither addressed it. (Id. at 1.) Employer filed an Application to Preclude and/or Quash Respondent's Designation of Additional Issue on Appeal (Application to Preclude and/or Quash) on July 19, 2016, arguing that Claimant's additional issue "is an independent request that the Board's Order calculating [Claimant's] AWW pursuant to [the calculation in] Bur[k]hart, as $351[.00 per week], be reversed such that the AWW is calculated pursuant to Section 309(d.2) to instead reflect an AWW of $450[.00 per week], and that [his] benefits be modified accordingly." (Application to Preclude and/or

8

Quash ¶ 10 (emphasis in original).) Employer argues that Claimant waived the issue pursuant to Rules 1513 and 1551 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1513 and 1551, because he did not timely raise or preserve the issue in a Petition for Review or Cross-Petition for Review. (Id. ¶¶ 11-12, 19.) Employer simultaneously filed a Memorandum in Support of its Application to Preclude and/or Quash.

Claimant filed his answer to the Application to Preclude and/or Quash, arguing that he may properly raise an alternative interpretation of Section 309(e) of the Act, and that he argued before both the WCJ and the Board that if he were found to be a seasonal employee, the expected earnings calculation under Section 309(d.2) was the appropriate method to use in calculating his AWW based on the language contained in the initial clause of Section 309(e). (Answer ¶ 4.) Claimant clarified that the issue would only need to be reached if the Court first reverses the Board's decision regarding seasonal employment and determines that Claimant *was* a seasonal employee. (Id. ¶ 3.) After argument on the issue, this Court denied the Employer's Application to Preclude and/or Quash Claimant's additional issue via order dated August 17, 2016. Toigo Orchards, LLC v. Workers' Comp. Appeal Bd. (Gaffney) (Pa. Cmwlth., No. 722 C.D. 2016, filed Aug. 17, 2016).

## II. ARGUMENTS ON APPEAL

On appeal, Employer argues that the Board erred by reversing the WCJ's determination that Claimant was a seasonal employee within the meaning of Section 309(e) of the Act, and reversing and modifying the WCJ's calculation of Claimant's AWW as a seasonal employee under that same section. Employer

9

further argues that the Board erred by reversing the WCJ's decision to omit an award for a healing period pursuant to Section 306(c)(25) of the Act.

### A. Seasonal Employment

Employer first argues that the Board erred by reversing the WCJ's determination and concluding that Claimant was not a seasonal employee under Section 309(e) of the Act, which provides, as follows:

> (e) Except as provided in clause (d.1) or (d.2), in occupations which are *exclusively seasonal* and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth of the total wages which the employe has earned from all occupations during the twelve calendar months immediately preceding the injury, unless it be shown that during such year, by reason of exceptional causes, such method of computation does not ascertain fairly the earnings of the employe, in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings.

77 P.S. § 582(e) (emphasis added). Employer argues that the Board erred by reading Section 309(e) too broadly and determining that Claimant's job at the time of his injury, as an extra tractor driver for the apple harvest, was "employment in itinerant agricultural labor" because such an occupation can be carried on for pay during the rest of the year. Employer contends that Claimant's job as an extra tractor driver for the apple harvest falls squarely within the Pennsylvania Supreme Court's definition of seasonal employment in Froehly, 139 A. at 730.

The Act does not define what constitutes an "exclusively seasonal" occupation. However, in Froehly, the Supreme Court stated that "[s]easonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it."

10

Id. at 730.  The Supreme Court further stated that "labor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is certainly not seasonal."  Id.  In Froehly, the claimant was injured while working as a dishwasher for an amusement park that was only open during the summer months from June to September.  The amusement park argued that the claimant was a seasonal employee because the park was only open for a few months out of the year, and the claimant's employment did not extend beyond that time.  The Supreme Court rejected that argument and held that dishwashing was not a seasonal occupation, even though the park was only open for a few months out of the year, because it could be carried on throughout the year.  Id.  The inquiry, thus, focused on the *nature of the work* rather than on the period during which the business operates.

This Court utilized the analysis from Froehly in Ross v. Workers' Compensation Appeal Board (Arena Football League), 702 A.2d 1099 (Pa. Cmwlth. 1997).  In Ross, the claimant, a professional football player, was injured during the term of his contract, which was signed on May 25, 1990 and effective through the end of October 1990.  Id. at 1100.  The employer argued that the claimant should be considered a seasonal employee and that his benefits were incorrectly calculated, and the WCJ and the Board agreed.  The claimant argued on appeal that, pursuant to Froehly, he was not a seasonal worker because, although the employer had a set season, he could play football for other teams in other leagues.  We disagreed and distinguished the case from Froehly because his season of play was for a fixed period of time, and his contract prohibited him from engaging in off-season play.  Id. at 1101.  Thus, we held that the claimant was a seasonal employee.  Id.

11

We have more recently addressed <u>Froehly</u> and seasonal employment in several unreported decisions,[7] which Claimant cites in support of the Board's decision. In <u>Statlers Family Fun Center v. Workers' Compensation Appeal Board (Sarnese)</u> (Pa. Cmwlth., No. 1414 C.D. 2009, filed Mar. 17, 2010), the claimant, an assistant manager at an amusement park, which only remained open from March through October, sustained a work-related injury while assisting patrons of the employer's go-cart track. In determining that the claimant was not a seasonal employee under the Act, the Court considered the duties that the claimant performed as an assistant manager, which can be carried out year-round for any employer. <u>Id.</u>, slip op. at 5. The Court held that the question in seasonal employment cases is "whether the job . . . performed is capable of being carried on for pay during the rest of the year." <u>Id.</u> at 9 (citing <u>Froehly</u>, 139 A. at 730). Although the employer attempted to rely on <u>Ross</u>, we distinguished the case from <u>Ross</u>, stating that the claimant did not have a contract that limited her work to a fixed period of the year or that prohibited her from working for other employers during the off-season. <u>Id.</u>

More recently, in <u>Keenan v. Workers' Compensation Appeal Board (Cocco)</u> (Pa. Cmwlth., No. 1061 C.D. 2014, filed July 10, 2015), this Court examined the nature of the claimant's occupation as a laborer that installed and removed cloth awnings and concluded that the position was capable of being performed throughout the entire year and was, thus, not seasonal. <u>Id.</u>, slip op. at 7. The Court noted that, unlike the claimant in <u>Ross</u>, this claimant did not have a contract that

---

[7] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of this court issued after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

12

precluded him from finding employment as a laborer elsewhere, and although he expected to be laid off in the winter, the claimant would continue work when the weather became more suitable for working outside.  Id.

Based on our recent case law, which, consistent with the humanitarian purpose of the Act, has expansively construed the types of labor or occupations that can be carried on throughout the year, we conclude that the Board did not err in concluding that Claimant was engaged in "itinerant agricultural labor," and that his position as a temporary tractor driver for the apple harvest is not seasonal employment under Section 309(e) of the Act.  Itinerant farm laborers travel from state to state to harvest crops or engage in other work related thereto, (see Mr. Calloway's Testimony, R.R. at 100a), and although one season may end, laborers' work can still be carried on for pay throughout the year.  Here, Claimant was hired as a tractor driver, albeit on a temporary basis, and a tractor driver can perform his work for pay throughout the year.  Further, unlike the claimant in Ross, who had signed a seasonal professional football employment contract that precluded him from performing that occupation for other employers, Claimant did not have a contract prohibiting him from finding work as a laborer somewhere else. Employer's point is well taken that, other than the football player in Ross, it is hard to imagine employment that would be classified today as exclusively seasonal, if itinerant agricultural workers are not so classified.  However, this interpretation is consistent with our precedent, and accordingly, we affirm the Board's conclusion that Claimant was not a seasonal employee.

13

## B.    Average Weekly Wage Calculation

Both Employer and Claimant have raised questions about the calculation of Claimant's AWW.  However, because we determined that Claimant was not a seasonal employee, Employer's and Claimant's arguments about the application of Section 309(e), which governs the calculation of AWW for occupations that are "exclusively seasonal," are not relevant to this case.  Nonetheless, because of the questions raised regarding the calculation of Claimant's AWW, we will briefly explain why the Board did not err in relying on Burkhart.

In Burkhart, the claimant was employed as a laborer for 16 weeks, but worked for only 12 weeks before he was injured.  As in this case, the claimant there also did not have a specific number of work hours per week.  After reviewing both Sections 309(d)(1) and (d.2),[8] and the employment history of the claimant and the employer, the Board concluded that neither applied.  Specifically, Section 309(d.1) did not apply because that subsection was intended to govern long-term employment relationships, and Section 309(d.2) did not "reflect[] economic reality because . . . [the claimant] did not have an expected number of weekly hours to

---

[8] Sections 309(d.1) and (d.2), added by the Act of June 24, 1996, P.L. 350, as amended, 77 P.S. § 582(d.1)-(d.2), provide, as follows:

> (d.1) If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

> (d.2) If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

14

work." Burkhart, 896 A.2d at 10. The Board, therefore, applied an alternative calculation and arrived at the claimant's AWW by dividing his gross wages by 12, the number of weeks the claimant actually worked and earned wages. Id. On appeal, this Court agreed with the Board that the alternative calculation fairly assessed the claimant's earnings when he was actually working and advanced the humanitarian purpose of the Act, as well as the purpose of Section 309 to accurately capture economic reality when calculating a claimant's AWW. Id. at 13; see Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corporation), 883 A.2d 537, 545 (Pa. 2005) (recognizing that a claimant's AWW should reflect economic reality); Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.), 834 A.2d 524, 532-534 (Pa. 2003) (same).

Here, similar to the claimant in Burkhart, Claimant was employed as a tractor driver from September to November, or approximately eight to nine weeks, at the rate of $9.00 per hour. However, he only worked and earned wages for five weeks before he was injured. Claimant and Mr. Calloway both testified that Claimant's normal working hours were 7:00 a.m. to 5:00 p.m., and that Claimant was not expected to work when it rained. (R.R. at 63a, 84a, 114a, 117a.) Claimant's pay stubs, admitted into evidence at the hearing, showed that his hours, and thus his wages,[9] varied for each of the five weeks he worked before he was injured, similar to the claimant's in Burkhart. Because Claimant did not have a long-term employment relationship with Employer and did not have a specific number of hours he worked per week, he does not fall into either (d.1) or (d.2) and,

_____

[9] Claimant worked the following hours each week, respectively: 22.0, 34.3, 48.3, 52.0, and 38.0. Claimant's wages for those weeks were, respectively, as follows: $198.00, $310.50, $436.50, $468.00, and $342.00, for a total of $1,755.00. (Board Op. at 8-9.)

15

therefore, an alternative calculation was proper. We see no error in the Board's calculation, in which it divided Claimant's total gross earnings by the weeks he worked, which yielded an AWW of $351.00 ($1,755.00 divided by 5 weeks) and a benefit rate of $315.90. Accordingly, we affirm the Board's Order in this regard.

### C. Healing Period

Finally, Employer argues that the Board erred by reversing the WCJ's decision to omit an award for a healing period pursuant to Section 306(c)(25) of the Act. Section 306(c)(25) of the Act provides, in pertinent part, as follows:

> (25) In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability *necessary and required* as a healing period shall be compensated in accordance with the provisions of this subsection. The healing period shall end (i) when the claimant returns to employment without impairment in earnings, or (ii) on the last day of the period specified in the following table, whichever is the earlier:
>
> * * *
>
> For the loss of an eye, ten weeks.

77 P.S. § 513(25) (emphasis added). Specifically, the question is whether Claimant, who was retired prior to his work with Employer and who returned to retirement after he was injured and was retired when he sought benefits for the loss of his eye, is entitled to benefits for a "healing period."

In Sun Oil Company v. Workmen's Compensation Appeal Board (Davis), 600 A.2d 684, 686 (Pa. Cmwlth. 1991), this Court stated that Section 306(c)(25) does not require the claimant to show a loss of earnings before a healing period will be awarded. Rather, the loss of earnings is presumed by a claimant's showing

16

of a specific loss, and therefore a claimant does not have to show an actual impairment of earning capacity to qualify for the healing period of benefits under Section 306(c)(25). This Court clarified Sun Oil (Davis)'s holding in Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corporation), 698 A.2d 1372 (Pa. Cmwlth. 1997), stating that "[a]lthough Sun Oil [(Davis)] holds that a claimant is entitled to a *presumption* that the specific loss entitles him or her to the healing period prescribed under Section 306(c)(25) of the Act, such a presumption is *rebuttable*." Id. at 1377 (emphasis in original). Thus, a claimant's entitlement to a healing period is not automatic, and it is "the employer's burden to present evidence to rebut the presumption of the claimant's entitlement to [a] . . . healing period." Id.

Employer argues that it rebutted the presumption that Claimant was entitled to the 10-week healing period because he was retired and collected Social Security retirement benefits both prior to and after his work with Employer, and he had no intention of returning to work after his injury. Employer relies on Sun Oil Company v. Workers' Compensation Appeal Board (Carroll), 811 A.2d 1131 (Pa. Cmwlth. 2002), to support its argument. In Sun Oil (Carroll), this Court stated that the claimant, who retired before his specific loss benefits began, was not entitled to the payment of a healing period because "he did not require a period for healing." Id. at 1136. The claimant in that case discovered his work-related hearing loss *after* he had retired from his employer. Id. at 1132. The Court noted that the claimant did not retire *because of* his specific loss of hearing, and thus, "he [did] not need a healing period to recover from his disability." Id. at 1136.

Here, similar to the claimant in Sun Oil (Carroll), Claimant testified that he had not worked prior to his work injury for about six and a half years, and he had

been receiving Social Security retirement benefits before the injury for approximately six years since he retired at the age of 62. (R.R. at 77a-78a, 85a-86a.) At the time of the hearing, Claimant was 70 years old. (Id. at 81a.) Claimant testified that he stopped his Social Security retirement benefits while he was working for Employer in Pennsylvania, and he admitted to receiving those benefits again when he returned to Florida, *as he had planned to do* after the apple harvest was over. (Id. at 79a, 84a-85a.) Claimant went back into retirement upon his return to Florida, and there is no evidence in the record to show that Claimant's work injury was the reason he went back into retirement or that he intended to go back to work for any employer after his work injury. Moreover, Claimant did not file his Claim Petition until July 1, 2014, after he had returned to Florida and returned to retirement. Consistent with Sun Oil (Carroll), Employer has rebutted the presumption that Claimant's specific loss entitled him to a healing period and, therefore, the Board erred in reversing the WCJ and awarding Claimant benefits for a 10-week healing period. We therefore reverse the Board's decision in that regard.

## III. CONCLUSION

For the foregoing reasons, the Board's decision is affirmed in part and reversed in part.

_____
**RENÉE COHN JUBELIRER,** Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Toigo Orchards, LLC and
Nationwide Insurance Company,
                Petitioners

           v.

Workers' Compensation Appeal
Board (Gaffney),
                Respondent

: 
: 
: 
: 
:    No. 722 C.D. 2016
: 
: 
: 
: 

## O R D E R

**NOW**, March 13, 2017, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED** in part and **REVERSED** in part. The Order is **AFFIRMED** to the extent that it determines that Earl Gaffney (Claimant) was not a seasonal employee under the Workers' Compensation Act[1] and applies an alternative average weekly wage calculation pursuant to Burkhart Refractory Installation v. Workers' Compensation Appeal Board (Christ), 896 A.2d 9 (Pa. Cmwlth. 2006). The Order is **REVERSED** to the extent that it awards Claimant benefits for a 10-week healing period.

_____
**RENÉE COHN JUBELIER,** Judge

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1-1041.4, 2501-2708.