IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniel Critton, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1409 C.D. 2023 |
| | : | |
| Fine Arts Discovery Series, Inc. | : | |
| (Workers' Compensation Appeal | : | |
| Board), | : | |
| Respondent | : | Submitted: September 9, 2024 |

BEFORE:    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE LORI A. DUMAS, Judge
                    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                        FILED:  October 22, 2024

Daniel Critton (Claimant) petitions this Court for review of the November 7, 2023 Order of the Workers' Compensation Appeal Board (Board), which affirmed a March 9, 2023 decision by a workers' compensation judge (WCJ) calculating Claimant's average weekly wage (AWW) to be $269.23.  Claimant argues that the WCJ disregarded credible evidence that his compensable earnings are higher, decided upon matters not within his jurisdiction, and ignored instructions given to him by the Board on remand.  Upon review, we affirm.

**I.  Background**

Claimant suffered an injury while working for Fine Arts Discovery Series, Inc. (Employer) on March 8, 2019, when he slipped and fell on ice while using the rear entrance of a theater operated by Employer.  Certified Record (C.R.), Item No. 14, WCJ Decision, 3/10/2020 (WCJ Decision I), Finding of Fact (F.F.) No. 2.   In a claim petition, Claimant alleged to have sustained a fractured humerus due to the

injury, but Employer contested liability, asserting that Claimant had violated a positive work order not to use the rear entrance. *Id.*, F.F. No. 1.

In support of his claim petition, Claimant offered his own testimony at a hearing before the WCJ, maintaining, *inter alia*, that he had no recollection of being told not to use the rear entrance of the theater. *Id.*, F.F. No. 2. In addition, Claimant averred that he had been working at a second job in a warehouse belonging to the Johnson & Johnson Company, which the March 8, 2019 injury also prevented him from working. *Id.* Claimant also testified that he had been receiving Social Security disability benefits since 2004, which prohibited him from earning more than a certain yearly amount through employment. *Id.* Consequently, Claimant would continue to work at Johnson & Johnson until his income approached that limit, then stop working there until the next year.[1] *Id.* Claimant and Employer also offered deposition testimony by medical experts regarding Claimant's ability to work while recovering from his injury. *Id.*, F.F. Nos. 4-5. In its defense, Employer presented

---

[1] Claimants testimony appears in the record as follows:

[Employer's counsel:] You testified on [d]irect [e]xamination when you were hired at Johnson & Johnson you were going to work 40 hours a week –
[Claimant:] Yes.
[Employer's counsel:] – at $10 –
[Claimant:] That's right, because I didn't hit my limit. I have a limit as far as being on [Social Security] disability. That's the law. We all know that.
[WCJ:] What is the limit?
[Claimant:] The limit for me – . It's different. Everybody has –
[WCJ:] I know it's different –
. . .
[Claimant:] Yeah mine is $14,000.
[WCJ:] Okay.
[Claimant:] $14,000. Which I never come to close any year when I work.

*Fine Arts Discovery Series, Inc. v. Critton (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1000 C.D. 2021, filed Oct. 20, 2022) (*Critton I*), C.R., Item No. 12., 5/10/2019 Hr'g Tr. at 23-24.

the testimony of four employees regarding its policy prohibiting the use of the rear entrance. *Id.*, F.F. No. 3.

In a March 10, 2020 decision, the WCJ found that Claimant was aware of the rear entrance policy but nonetheless granted his claim petition, reasoning that the unauthorized use of the rear entrance did not "actually remove [] Claimant from the course of employment," as required by the relevant case law. *Id.*, Conclusions of Law (C.L.) Nos. 4-5. The WCJ also credited Claimant's testimony that he was working for Johnson & Johnson as well as Employer at the time of the injury. *Id.*, F.F. No. 8.[2] Because of Claimant's failure to produce a statement of wages, however, the WCJ acknowledged that he did "not know what [] Claimant's [AWW] would have been." *Id.*, C.L. No. 6.

On cross-appeals by Claimant and Employer, the Board affirmed the grant of the claim petition but remanded to the WCJ "to determine Claimant's AWW in light of Claimant's testimony concerning the hours worked and his hourly salary for both [Employer] and Johnson & Johnson." *See* C.R., Item No. 13, Board Op., 8/19/2021, (Board Op. 1) at 9. On Employer's appeal to this Court,[3] we affirmed the Board, concluding that Employer had failed to specify "how Claimant's use of the rear entrance versus the alternate entrance in the front has so removed him from his duties as a security guard that the activity should render him a 'stranger or trespasser.'"

---

[2] Notably, while the WCJ found that Claimant worked for Johnson & Johnson, his factual findings do not contain a conclusion that Claimant worked there 40 hours weekly, or any other definite number of hours.

[3] Claimant argued in a Motion to Quash that the Board's order was interlocutory and not immediately appealable, since the calculation of Claimant's AWW required the exercise of discretion. *See Critton I*, slip op. at 5 n.3. We denied the Motion to Quash in an October 21, 2021 order, explaining that the Board did not remand for further fact-finding, but only to arrive at an AWW based on the already-credited testimony. *Id.*

*Critton I*, slip op. at 5 (citing *Dickey v. Pittsburgh & Lake Erie R.R. Co.*, 146 A. 543, 544 (Pa. 1929)).

Immediately following our ruling in *Critton I*, Claimant filed a review petition seeking a calculation of his AWW pursuant to the Board's instructions. *See* C.R., Item No. 2. At a brief hearing on the matter on November 29, 2022, the parties and the WCJ agreed that no further factfinding would be necessary, and that the record from the previous stage of litigation was sufficient for a proper calculation of Claimant's AWW. *See* C.R., Item No. 11, 11/29/2022 Hr'g Tr. at 6.

In his March 9, 2023 Decision, the WCJ reiterated that Claimant had failed to produce documentary evidence of his second job at Johnson & Johnson, but nonetheless credited Claimant's testimony that he was employed there at the time of the injury. C.R., Item No. 4, WCJ Decision, 3/9/2023 (WCJ Decision II), F.F. Nos. 5, 8. The WCJ thus concluded that Claimant earned pay from the Johnson & Johnson employment in addition to the pay from Employer.[4] *Id.*, F.F. No. 8. The WCJ noted that Claimant was "not the best historian" and that his testimony was "sometimes confusing." *Id.*, F.F. No. 7. The WCJ further noted Claimant's admission that he worked limited hours to keep his employment income below $14,000 yearly in order to remain eligible for Social Security disability. *Id.*, F.F. No. 7. Thus, the WCJ concluded that Claimant's weekly wage was $269.23—i.e., $14,000 divided by 52 weeks—resulting in a weekly compensation rate of $242.30.[5] *Id.*, F.F. No. 9.

---

[4] Precise pay figures are not available from the record. However, Claimant stated during his testimony that he earned $12.00 an hour while working approximately 12 to 13 hours weekly for Employer, and that the Johnson & Johnson position was "a 40[-]hour[-]per[-]week job" paying $10.50 an hour. *Critton I*, C.R., Item No. 12., 5/10/2019 Hr'g Tr. at 10-11.

[5] Section 306(a)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511(1), provides that, when the normal calculation of an employee's

4

Claimant appealed to the Board, arguing that the findings of fact in the WCJ's calculation of his AWW were unsupported by record evidence, and that the WCJ had failed to follow the Board's instructions. *See* C.R., Item No. 5. Employer also appealed, maintaining that Claimant had failed to present competent evidence of the earnings from his second job. *See* C.R., Item No. 7. The Board rejected both parties' claims and affirmed the WCJ. *See* C.R., Item No. 9. Claimant's instant appeal to this Court followed.[6]

## II. Issues

Claimant maintains that the WCJ's calculation of his AWW is improper because Claimant had offered unrebutted testimony that his income from both jobs was far greater than the WCJ's determination, because the WCJ lacks jurisdiction over Social Security disability benefits, and because the consideration of Social Security disability income was outside the scope of remand set forth by the Board in its August 19, 2021 order.

## III. Discussion

Section 309 of the Act governs the method of calculating an injured employee's wages for the purpose of determining the benefit amount to which he or she is entitled. 77 P.S. § 582. It provides that the term "wages" in the workers' compensation context shall be construed to mean the AWW of the injured employee calculated in accordance with one of the subsections (a) through (e) of Section 309,

---

weekly compensation rate results in a figure less than 50% of the statewide AWW, that employee's weekly compensation rate shall be the lower of either 50% of the statewide AWW or (as in this instance) 90% of the employee's own AWW.

[6] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

which envisage different arrangements of employment and pay.[7] 77 P.S. § 582(a)-(e). The determination of a worker's AWW raises a question of law, subject to plenary review. *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 527 (Pa. 2003).

In *Hannaberry*, our Supreme Court examined the question of whether "unusual circumstances" warranted an exception to the calculation methods outlined in subsections (a) through (e). *Id.* In that case, a claimant became permanently injured soon after becoming a full-time employee, following several months of working in a part-time capacity. *Id.* at 525. As an hourly employee, the claimant's AWW would normally have been calculated with the formula set forth at Section 309(d) of the Act, 77 P.S. § 582(d). Because Section 309(d) uses weeks of employment that occurred several months before the injury, however, the claimant's AWW so calculated would have been far lower than his actual pay at the time of the

---

[7] *See* 77 P.S. § 582(a) (providing that the AWW for workers whose wages are "fixed by the week" is "the amount so fixed"); *id.* § 582(b) (providing that the AWW for workers whose wages are "fixed by the month" shall be "the monthly wage so fixed," multiplied by 12 and divided by 52); *id.* § 582(c) (providing that the AWW for workers whose wages are "fixed by the year" shall be "the yearly wage so fixed," divided by 52); *id.* § 582(d) (providing that, if "at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c)," the AWW shall be calculated by dividing by 13 the total wages earned during the employment in each of the highest three of the last four consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the injury and by averaging the total amounts earned during these three periods); *id.* § 582(d.1)-(d.2) (varying the formula set forth in subsection (d) for workers who have worked for the employer for less than 39 of the preceding 52 weeks, or for less than 13 weeks total); *id.* § 582(e) (providing that, except as outlined in the previous subsection, the AWW of workers whose occupations are "exclusively seasonal" shall be 1/50 of the total wages earned by the worker from all occupations in the 12 preceding calendar months, unless, "by reason of exceptional causes, such method of computation does not ascertain fairly the earnings of the employe, in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings"; also providing that, when an employee works "under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation").

injury. *Hannaberry*, 834 A.2d at 528. The Court observed that Section 309 is "obviously . . . designed to ensure an **accurate** calculation of wages," for which purpose the General Assembly provided "differing methods of calculation to account for factors unique to different employment arrangements." *Id.* at 532 (emphasis in original). The Court thus held that the method of calculation prescribed by subsection (d) does not control "in a circumstance, such as this one, where it would lead to a grossly and demonstrably inaccurate measure of a worker's" AWW. *Id.* Rather, the Court reasoned, it would further the legislative intent of Section 309 in such instances to permit a calculation of AWW that does not strictly follow any of the methods prescribed in Section 309. *Id.* at 534. Indeed, the Court noted, a rigid adherence to those methods would lead "to an absurd and unreasonable result— a result we will not presume the General Assembly to have intended." *Id.* (citing 1 Pa.C.S. § 1922(1)).

In the years since *Hannaberry*, this Court has consistently held that when "the Act does not address a method of calculating the AWW for a particular situation, the AWW is calculated using an alternative method which will advance the overall humanitarian purpose of the Act." *Anderson v. Workers' Comp. Appeal Bd. (F.O. Transp.)*, 111 A.3d 238, 242 (Pa. Cmwlth. 2015). *See*, *e.g.*, *id.* at 244 (employing an alternate method of calculation where the claimant had no fixed hourly wage rate and worked only on occasions when employer needed); *Toigo Orchards, LLC v. Workers' Comp. Appeal Bd. (Gaffney)*, 156 A.3d 407, 416 (Pa. Cmwlth. 2017) (holding that "an alternative calculation was proper" where the claimant "did not have a long-term employment relationship with [the e]mployer and did not have a specific number of hours worked per week"); *Pravco, Inc. v. Workers' Comp. Appeal Bd. (Marshall)* (Pa. Cmwlth., No. 197 C.D. 2015, filed Dec. 18, 2015)

7

(unreported), slip op. at 2 (remanding with instructions to employ an alternate method of calculation where the claimant's "testimony . . . illustrated that his job could be sporadic in nature and that his hours could vary from week to week").[8]

Instantly, the WCJ credited Claimant's testimony that he was working both for Employer and for Johnson & Johnson at the time of his injury. WCJ Decision II, F.F. No. 5. The WCJ therefore properly treated income from both jobs "as if earned from the employer liable for compensation" for purposes of calculating AWW, pursuant to Section 309(e) of the Act, 77 P.S. § 582(e). Under normal circumstances, the AWW for each would then be calculated according to one of the calculation methods set forth in subsections (a) through (e). *See*, *e.g.*, *Triangle Bldg. Ctr. v. Workers' Comp. Appeal Bd. (Linch)*, 746 A.2d 1108, 1112 (Pa. 2000) (applying Section 309(d)'s formula for the AWW of an hourly employee in a concurrent employment context). In this case, however, the WCJ was faced with a set of facts not contemplated by the General Assembly. Claimant's yearly income was determined not by a fixed, periodic salary or by a set number of work hours, but by the $14,000 cap imposed by his eligibility for Social Security disability payments. That limit dictated how much, if at all, Claimant was permitted to work from week to week. As in *Hannaberry*, where a rigid adherence to the methods of calculation enumerated in Section 309 would have produced an "absurd and unreasonable result," 834 A.2d at 534, the WCJ in this case properly resorted to an alternate method of calculation in pursuit of the most accurate estimate of Claimant's earnings.

On appeal, Claimant argues that the WCJ's calculation of his AWW constitutes legal error for three reasons. The first is that the only evidence of

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported opinion of this Court for its persuasive value. 210 Pa. Code § 69.414(a).

Claimant's income in the record is his own testimony, which Employer "had ample opportunity and multiple witnesses to rebut," but did not. Claimant's Br. at 12. Since Employer never offered evidence to dispute the averment that Claimant worked 40 hours weekly, year-round, at Johnson & Johnson, Claimant argues that the WCJ improperly disregarded that purported testimony. Contrary to the WCJ's findings, Claimant argues, his properly calculated AWW is $572.[9] Second, Claimant argues that his eligibility for Social Security disability benefits is "beyond the scope and jurisdiction of a WCJ and the . . . Act," and, therefore, irrelevant to the calculation of his AWW. *Id.* at 14. Third, Claimant argues that the WCJ disregarded the Board's clear instruction on remand to calculate his AWW "in light of Claimant's testimony concerning the hours worked and his hourly salary for both [Employer] and Johnson & Johnson." *Id.* at 10 (citing Board Op. 1 at 9).

Claimant's first argument is lacking in merit. There is nothing in the record to support the claim that Claimant's 40-hour work weeks at Johnson & Johnson continued throughout the year. To the contrary, Claimant testified unambiguously that the hours worked at Johnson & Johnson were limited by his Social Security disability earnings cap. We see no reason why the WCJ should have rejected that part of Claimant's testimony and assumed, without foundation, that Claimant's full-time work hours should be extrapolated to an entire 52-week period. Such an unreasonable estimate of his earnings would lead to the sort of "grossly and demonstrably inaccurate measure" of an AWW that the Supreme Court instructs us to avoid in *Hannaberry*, 834 A.2d at 534.

For similar reasons, we reject Claimant's remaining arguments. Claimant correctly notes that neither "the Board, nor a WCJ, . . . has subject matter jurisdiction

_____

[9] That is, the $428 purportedly earned weekly by working 40 hours for Johnson & Johnson at $10.70 per hour, in addition to the $144 earned from working 12 hours weekly for Employer.

9

over proceedings that relate to benefits other than workers' compensation benefits." Claimant's Br. at 13 (citing *Bingnear v. Workers' Comp. Appeal Bd. (City of Chester)*, 960 A.2d 890, 894 (Pa. Cmwlth. 2008)). Such an observation is of little relevance here, however, since the WCJ's decision was a correct exercise of his jurisdiction over Claimant's *workers' compensation* benefits. Claimant's Social Security disability benefits are unaffected by the WCJ's calculation of his AWW.

Lastly, we disagree that the WCJ deviated in any way from the Board's instruction to calculate Claimant's AWW "in light of Claimant's testimony concerning the hours worked and his hourly salary for both [Employer] and Johnson & Johnson." Board Op. 1 at 9. Because of Claimant's failure to produce documentary evidence of his hours worked at Johnson & Johnson, his testimony regarding the limits on his work hours imposed by his Social Security benefits was the only evidence available to the WCJ addressing the question of how many hours Claimant worked. Thus, Claimant fails to establish why the WCJ's reliance on that testimony constituted a deviation from the Board's remand instructions.[10]

---

[10] Although it did not appeal from the Board's decision, Employer, too, urges this Court to reverse. Employer explains in its Brief to this Court that, "since [C]laimant submitted no documentary evidence pertaining to his wages," or any evidence beyond his own "troubling" testimony, he "clearly failed to meet his burden of establishing all of the elements necessary to support an award." Employer's Br. at 9.

Employer cites no legal authority for the supposition that in-person testimony is insufficient to meet a claimant's burden of proof. To the contrary, it is well settled that a claimant's burden is met with substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002). Thus, while Employer may raise valid concerns about the reliability of Claimant's inconsistent testimony, it does so belatedly, as the proper venue for such concerns would have been before the factfinder. It is well settled that the WCJ "has exclusive province over questions of credibility and evidentiary weight." *Repash v. Workers' Comp. Appeal Bd. (City of Phila.)*, 961 A.2d 227, 232 (Pa. Cmwlth. 2008). In this case, rather than raise evidentiary disputes, both Claimant and Employer simply agreed with the WCJ that the record from the previous stage of the matter was sufficient to support a calculation of Claimant's AWW. 11/29/2022 Hr'g Tr. at 6.

## IV. Conclusion

For the foregoing reasons, we affirm the Board.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Critton,      :
     Petitioner  :
          :
  v.        : No. 1409 C.D. 2023
          :
Fine Arts Discovery Series, Inc. :
(Workers' Compensation Appeal :
Board),       :
     Respondent :

# **O R D E R**

AND NOW, this 22nd day of October, 2024, the Order of the Workers' Compensation Appeal Board in the above-captioned matter, dated November 7, 2023, is AFFIRMED.

<br>

ELLEN CEISLER, Judge