557 A.2d 841

Edward T. McGlasson, Petitioner *v.* Workmen's Compensation Appeal Board (Philadelphia Eagles Football Club), Respondents.

Argued December 11, 1989, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three. Request for reconsideration filed and granted. Heard April 5, 1989, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and SMITH.

*Don P. Foster, Rubin, Quinn & Moss,* for petitioner.

*Thomas E. Sennett, Swartz, Campbell & Detweiler,* for respondent, Philadelphia Eagles Football Club.

OPINION BY JUDGE CRAIG, April 28, 1989:

Edward T. McGlasson appeals an order of the Workmen's Compensation Appeal Board affirming a referee's decision to award disability benefits, but reversing the referee's decision to include a $7500 signing bonus in the computation of his average weekly wage for the purpose of workmen's compensation benefits. We affirm the board's decision to exclude the signing bonus from the calculation of benefits.

The facts of the case are not in dispute. McGlasson was under contract to perform with the Philadelphia Eagles Football Club for the 1983-84 football season. The terms of the contract included a $7,500 "signing bonus" which McGlasson received in May of 1983.

On July 25, 1983, McGlasson suffered a career-ending knee injury during the Eagles' pre-season training period. He filed a claim petition for workmen's compensation, and the referee found that McGlasson was eligible for total disability benefits under section 306(a) of The Pennsylvania Workmen's Compensation Act,[1] from July 25, 1983 through April 14, 1984, and partial disability benefits under section 306(b) of the Act, 77 P.S. §512, from April 15, 1984, to the present. The ordered benefits

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §511.

were based on an average weekly wage derived from a total wage that included the signing bonus. The referee also assessed counsel fees against the team because, he concluded, there was no reasonable basis for the Eagles to contest the claim.

The Eagles then appealed the decision to the board which, reversing in part, excluded the signing bonus from the total wages as "an exceptional cause which does not fairly reflect the total wages of the Claimant." Section 309(d) of the Act, 77 P.S. §582(d). Additionally, the board held that the referee erred in finding that there was no reasonable basis for contest. McGlasson now appeals the board's decision.

The sole issue in this appeal concerns whether a professional athlete's signing bonus should be included in the computation of his average weekly wage for the purpose of workmen's compensation benefits. Our scope of review is confined to a determination of whether an error of law has been committed, constitutional rights have been violated, or whether any findings of fact are not supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

Section 309 of the Act does not define "wages," and McGlasson's contract, a standard "NFL Player Contract," does not specify an amount to be used as his total or average weekly wage in the event of a disability. Therefore, we must interpret the contract and determine whether the parties intended to include the signing bonus in the calculation of the average weekly wage. To ascertain those intentions, *all of the provisions* of the contract must be given effect. *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 302 A.2d 347 (1973).

Section 17 of the contract provides language indicating the parties' intentions. This section, pertaining to the rate of compensation to be paid to McGlasson if the

Eagles renew his contract for one additional year, states: "The phrase 'rate of compensation' as used above means yearly salary, including deferred compensation, and any performance bonus, *but excluding any signing or reporting bonus.*" (Emphasis added.)

More significantly, the "Signing Bonus" rider, signed and attached to the contract, states that

> *[i]t is expressly understood that no part of the bonus herein provided is part of any salary in the contract(s) specified above,* that said bonus shall not be deemed part of any salary of the contract(s) specified above if Club exercises any option for Player's services in a season subsequent to the final contract year, and that such obligations of Club are not terminable if such contract(s) is (are) terminated via the NFL waiver system. (Emphasis added.)

McGlasson contends that the signing bonus should be included in the computation of the average weekly pay because the Eagles had a contractual obligation to pay him in exchange for his passing the team physical, reporting to the team, practicing and playing with the team, and not leaving the team without its consent. However, McGlasson incorrectly characterizes these terms as requirements necessary to *"earn"* the signing bonus. The terms are actually conditions enumerated within the contract that permit the Eagles to terminate the entire contract in the event that McGlasson fails to meet team standards. Furthermore, McGlasson testified as follows:

Q. You, of course, received $7,500 signing bonus?

A. Yes, I received that in May.

Q. That was for *signing the contract,* not for playing football?

A. Right. (Emphasis added.)

A contractual obligation should be included in the computation of the average weekly wage. *Lenkiewicz v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 241, 395 A.2d 307 (1978). However, the language contained in the rider and section 17 of the contract expressly sets apart the signing bonus from the remainder of the contract. Essentially, the signing bonus is an independent contractual obligation which the Eagles satisfied upon payment of the $7,500 to McGlasson in May of 1983.

Finally, although not a factor in this case, the court should recognize the problems that would arise with multi-year contracts as a further indication that the signing bonus is not to be computed into the average weekly wage. Because of the extended nature of that type of contract, there would be no way to determine which one year or in what yearly proportion the one-time signing bonus should be computed into the average weekly wage (unless the parties specifically included such a provision).

Because McGlasson's contract establishes that the parties did not intend to include the signing bonus in the computation of his average weekly wage, the board did not commit an error of law.

Accordingly, we affirm the board's decision.

### ORDER

NOW, April 28, 1989, the order of the Workmen's Compensation Appeal Board, dated November 18, 1987, No. A-92034, is affirmed.

Judge DOYLE dissents.

Judge MCGINLEY did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE COLINS:

The majority points out that the term "wages" is not defined within Section 309 of The Pennsylvania Work-

men's Compensation Act.[1] The majority then concludes that we must interpret the contract and "determine whether the parties intended to include the signing bonus in the calculation of the average weekly wage."

The contract clearly evidences the parties' intent to set the signing bonus apart from the salary paid to McGlasson. It is equally clear that the intention to do so is for purposes of renewal of the contract in future years. Stated in another way, the Eagles sought to prevent McGlasson from claiming the signing bonus as part of his "base wages" and thereby increasing his next year's contract wages. The contract does not and arguably could not define base wages for purposes of computing average weekly wage to calculate workmen's compensation benefits.

The Eagles had a contractual obligation to pay the signing bonus to McGlasson. The 1983-84 contract created an absolute right to receipt of the signing bonus so long as McGlasson signed with the team, passed the physical exam, and reported to and remained in training camp. An addendum to that contract provided that in the event McGlasson failed or refused to report to the team to practice or play with the team, or left the team without the Eagles' consent, then he was to forfeit the proportionate amount of the total bonus not having been earned at the time of the default. Once these contingencies were met, a legally enforceable contract right to payment was created which rendered that payment part of the wage computation. *Widmer v. Widmer,* 176 Pa. Superior Ct. 264, 106 A.2d 875 (1954); *Specker v. Sun Ray Drug Co.,* 163 Pa. Superior Ct. 39, 60 A.2d 400 (1948). The majority attempts to distinguish the signing bonus as an "independent contractual obligation." I disagree with the majority's characterization of the bonus as such. This Court

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §582.

held in *Lenkiewicz v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 241, 395 A.2d 307 (1978), that a contractual obligation is not a "gratuity" and should be included in the computation of average weekly wage.

The pronouncement the majority is making is that an employer can contractually define what wages are for purposes of computing workmen's compensation benefits. This is a dangerous precedent. I would reverse that portion of the order of the Board which disallowed inclusion of the signing bonus in the computation of average weekly wage and reinstate the decision of the referee. Judge DOYLE joins in this Dissenting Opinion.