Cornelius ROSS, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ARENA FOOTBALL LEAGUE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 27, 1997.

Decided Oct. 22, 1997.

Reargument Denied Dec. 22, 1997.

Susan Paczak, Pittsburgh, for petitioner.

John W. Smart, Pittsburgh, for respondent and State Workmen's Insurance Fund.

R. Sean O'Connell, Canonsburg, for respondent and Wasau Insurance Company.

Before SMITH and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Cornelius Ross (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge

(WCJ) that reduced Claimant's benefits to reflect his status as a seasonal employee. This appeal raises two issues for review: whether the Board committed an error of law when it affirmed the WCJ's decision that Claimant was a seasonal employee and whether the Board erred in affirming the WCJ's decision that Claimant was not entitled to receive benefits until June 8, 1991, the date Claimant actually began to lose earnings.

The Arena Football League (Arena League) employed Claimant as a professional football player for the Pittsburgh Gladiators. Claimant signed an Arena League player agreement on May 25, 1990 to play arena football and to perform football-related activities through the end of October 1990. On June 1, 1990, Claimant injured his right toe at practice during the preseason ' training camp, which lasted approximately two weeks. Nevertheless, Claimant did not miss any regular season games. On August 3, 1990, Claimant again injured his toe, but this time it was during the one and only post-season game. Claimant thereafter filed a claim petition, and a notice of compensation payable was entered. Employer later filed a petition for review, asserting that Claimant should be considered a seasonal employee and that his benefits were incorrectly calculated.

Claimant also filed a petition for review asserting that the benefits he received were inaccurate because all of the wages he received for the 1990 season should have been considered in calculating his benefits; he requested that his lodging compensation be included in the calculation to increase his benefits. The WCJ denied Claimant's petition for review but granted Employer's petition and reduced Claimant's benefits based upon his classification as a seasonal employ-

ee. Benefits were calculated from June 8, 1991, the day the Arena League regular season began. Claimant appealed the WCJ's decision, and the Board affirmed, after which Claimant petitioned this Court for review.[1]

### I.

 It is Claimant's contention that the Board committed an error of law when it affirmed the classification of his employment with the Arena League as seasonal. Claimant relies on *Froehly v. Harton,* 291 Pa. 157, 139 A. 727 (1927), where the Supreme Court held that employment would be considered seasonal only if the nature of the work could not be carried on during any other time of the year. In *Froehly* a dishwasher was injured while working for an amusement park. The amusement park argued that because it only opened for a few months during the year, the employee's benefits should be calculated as a seasonal employee. The Court in *Froehly* rejected this argument, stating that the act of dishwashing was not seasonal although the dishwasher's employment may have been temporary because of the nature of the establishment. When determining whether an occupation is seasonal, the Board must examine, among other things, the nature of the occupation and whether it can be carried on continuously throughout the year rather than for a fixed period of time. *Id.*

The comparison made by Claimant between the circumstances in his case and those in *Froehly* is flawed. Claimant argues that since football can be played at anytime during the year, his employment was not seasonal.[2] Although football technically can be played at any time of the year, the Arena

---

1. The limited scope of review for this Court is to determine whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Blaschock v. Workmen's Compensation Appeal Board (Yalena Constr. Co.),* 155 Pa.Cmwlth. 452, 625 A.2d 194, *appeal denied sub nom. Yalena Constr. Co. v. Workmen's Compensation Appeal Board,* 535 Pa. 643, 631 A.2d 1013 (1993); *Russell v. Workmen's Compensation Appeal Board (Volkswagen of*

*America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

2. As further support, Claimant cites *American Mutual Ins. Co. v. Workmen's Compensation Appeal Board (Davenport),* 108 Pa.Cmwlth. 345. 530 A.2d 121 (1987), where the Court relied on *Froehly* and held that a marble setter was not a seasonal employee. The present case is not affected by the Court's decision in *American Mutual Ins.* because Claimant's job cannot be carried on throughout the year according to his contract.

League operates on a seasonal basis in that its games take place during a specified period of time. The 1990 Arena League contract defined the 1990 season as the League's training camp, including any and all exhibition games played; the regular season; playoff games; championship games; and any other games or contests engaged in before the end of October 1990. During the term of the contract, Claimant was prohibited from playing football other than for the Arena League without prior written consent.

Claimant, on the other hand, maintains that a team under the National Football League (NFL), the Canadian League or any other International League could have selected him once his season with the Arena League was completed. Yet, he offered no evidence to demonstrate that another football team offered him employment or sought his performance at periods outside of the Arena League contract. He draws his analogy in an attempt to lessen the impact of *Station v. Workmen's Compensation Appeal Board (Pittsburgh Steelers Sports, Inc.)*, 147 Pa. Cmwlth.512, 608 A.2d 625, *appeal denied*, 532 Pa. 659, 615 A.2d 1315 (1992), where the Court held that the claimant was a seasonal employee because his football contract specified that performance would run from the preseason training camp through the regular season and that the claimant was precluded from playing football during the off-season.

The applicability of *Station* becomes more evident when the Court focuses on the opinion as a whole. Upon a close reading, the Court concludes that the circumstances in *Station* and those in the case sub judice are indeed similar. Station and Claimant are professionals who play football each year for a specified period of time. Although NFL and Arena League schedules are different, their football seasons last for specified and fixed periods of time. Both contracts entered into by the players contain a clause that prohibits them from engaging in other football during the season or off-season. Station and Claimant also understood that they were entitled to earnings only after they had played an actual game and that they would receive earnings only during the season. The Court in *Station* thus appropriately noted that extending the season of employment to include periods of inactivity or independent activity is an error that should be avoided. Accordingly, the WCJ's classification of Claimant as a seasonal employee was proper and in accordance with sound legal principle.

■ Claimant next argues that the WCJ erred in calculating his average weekly wage and determining his compensation rate as a seasonal employee under the formula prescribed in Section 309(e) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(e). He objects to the application of Section 309(e) because it substantially reduced his average weekly wage and resulting compensation rate. Claimant argues, without merit, that *Station* is inapplicable because the WCJ applied Section 309(d) of the Act, 77 P.S. § 582(d), rather than Section 309(e) in computing the Claimant's average weekly wage.[3]

The Court in *Station* made clear that Section 309(e) addressed the method for determining the average weekly wage for a seasonal employee, but it stated that the application of Section 309(d) was appropriate in that case because the Claimant was a rookie with no prior employment other than amateur performance in his trade, and the application of Section 309(d) more fairly ascertained his wages. Here, however, the first contract executed between Claimant and the Arena League was in 1988; contracts were later executed in 1989 and 1990, and Claimant did not engage in any other

---

3. Section 309(d) was designed to provide guidance in unusual fact scenarios, and it provided that for wages fixed by the day, hour or output "the average weekly wage shall be the wage most favorable to the employee" among specified quarters of employment or methods of calculation. The quoted language was omitted in an amendment to Section 309(d) by Section 5 of the Act of June 24, 1996, P.L. 350.

Section 309(e) provides in pertinent part:
[I]n occupations which are exclusively seasonal ... the average weekly wage shall be taken to be one-fiftieth of the total wages which the employe has earned from all occupations during the twelve calendar months immediately preceding the injury, unless ... such method of computation does not ascertain fairly the earnings of the employe....

formal employment during the periods of his contract.

As stated, Section 309(e) specifically provides the method for the computation of benefits for seasonal employees. Claimant had no outside employment during 1990; his total wages included the earnings he received from the Arena League; and he did not work in 1991. As a result, the WCJ considered Claimant's 1990 earnings to compute his average weekly wage, and the WCJ quite apparently found no basis to reject the applicability of Section 309(e) where Claimant failed to demonstrate that the method of computation would not fairly measure his earnings. *Station.* Accordingly, the Board properly affirmed the WCJ's decision to rely on Section 309(e) of the Act as the basis for computing Claimant's benefits as a seasonal employee.

## II.

██ Finally, Claimant argues that the WCJ erred in deciding that Claimant was not entitled to benefits until June 8, 1991. Claimant posits that pursuant to Section 306(a)(1) of the Act, 77 P.S. § 511, compensation was payable to him at the rate of 66 and 2/3 percent of his average weekly wage and was to begin seven days after his total disability began on August 3, 1990, the day he injured his toe during the post-season game. The WCJ chose June 8, 1991 for the commencement of Claimant's compensation because that was the starting date for the regular season, and, although Claimant became disabled in August 1990, he incurred no financial loss because the 1990 season was completed. Besides, there is no indication in the record that Claimant intended to work during the off-season. The WCJ, therefore, was correct in finding that Claimant was not entitled to benefits until the 1991 Arena League season began.

██ In the alternative, Claimant argues that if August 3, 1990 is not chosen as the date upon which his total disability benefits should commence, then he should be compensated from the date training camp began and/or the first exhibition game played, whichever came sooner. He relies on *McGlasson v. Workmen's Compensation Ap-*peal Board (Philadelphia Eagles Football Club), 125 Pa.Cmwlth. 487, 557 A.2d 841 (1989), appeal denied, 525 Pa. 650, 581 A.2d 575 (1990), where the Court held that contractual obligations should be included when computing a claimant's average weekly wage. Claimant contends that his contractual relationship began with the Arena League at the preseason training camp, prior to June 8, 1991.

The contract, however, stated that the preseason training camp was probationary and without salary and that Claimant was not guaranteed employment upon the completion of training camp. Clearly then Claimant was aware that he was not considered an employee until chosen by a team after the training camp. Thus *McGlasson* offers no precedential value to Claimant's alternative argument since he would not have been entitled to earnings as an Arena League player until June 8, 1991. As no error of law was committed in this case, the Court affirms the order of the Board.

### ORDER

AND NOW, this 22nd day of October, 1997, the order of the Workers' Compensation Appeal Board is affirmed.

MIRARCHI, Jr., Senior Judge, dissents.