# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pittsburgh Steelers Sports, Inc.,     :
                Petitioner     :
                             :
         v.                    :    No. 1257 C.D. 2018
                             :    Argued:  October 2, 2019
Workers' Compensation Appeal     :
Board (Trucks),                      :
             Respondent    :


**BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge**
**HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE PATRICIA A. McCULLOUGH, Judge**
**HONORABLE ANNE E. COVEY, Judge**
**HONORABLE MICHAEL H. WOJCIK, Judge**
**HONORABLE CHRISTINE FIZZANO CANNON, Judge**
**HONORABLE ELLEN CEISLER, Judge**


**OPINION BY JUDGE BROBSON**      **FILED:  January 3, 2020**


       Petitioner Pittsburgh Steelers Sports, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated August 16, 2018.  The Board affirmed an order of Workers' Compensation Judge John McTiernan (WCJ McTiernan), which granted Anthony H. Trucks's (Claimant) claim petition and awarded temporary total disability benefits pursuant to Section 309(c) of the Workers' Compensation Act (Act).[1]  We now affirm.

       Claimant entered into a National Football League (NFL) Player Contract (Contract) with Employer on January 7, 2008.  (Reproduced Record (R.R.)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(c).  Section 309(c) of the Act provides:  "If at the time of the injury the wages are *fixed by the year*, the average weekly wage shall be the yearly wage so fixed divided by fifty-two."  (Emphasis added.)

at 14a.) The Contract spanned two football seasons and was intended to begin on the date of execution, or March 1, 2008, whichever occurred later. (*Id*. at 61a.) Under the terms of the Contract, Claimant's responsibilities included attendance at "mini-camp(s), official pre-season training camp, all [Employer] meetings and practice sessions, [and] all pre-season, regular season, and post-season football games scheduled for or by [Employer]," including any all-star football games sponsored by the NFL. (*Id.*) Claimant was further obligated to attend ten assigned appearances per year on behalf of Employer and to cooperate with news media in promoting the NFL. (*Id.* at 61a, 65a.) The terms of the Contract also prohibited Claimant from playing football or engaging in any football-related activities outside of his employment. (*Id.* at 61a.) In exchange for the performance of his contractual obligations, Employer was required to pay Claimant a yearly salary of $200,000 for the first season, and $230,000 for the second season. (*Id*.) Employer was further required to pay Claimant's compensation in weekly or biweekly installments over the course of the regular season. (*Id*. at 62a.)

Claimant filed a claim petition against Employer on August 4, 2011, alleging that he sustained a work-related injury to his left shoulder on August 8, 2008, during a football game in the course and scope of his employment with Employer. (*Id*. at 6a-8a, 28a.) The Bureau of Workers' Compensation assigned the matter to Workers' Compensation Judge Kathleen Vallely (WCJ Vallely). WCJ Vallely scheduled the matter for mandatory mediation, at which Employer agreed to accept liability for Claimant's work-related injury. (Certified Record (C.R.), Item No. 36 at 7; R.R. at 138a.) As a result, the only remaining issue for WCJ Vallely to decide was the proper method of calculating Claimant's average weekly wage (AWW). (R.R. at 138a.) By decision and order circulated September 5, 2014, WCJ

2

Vallely granted Claimant's claim petition and awarded Claimant disability benefits in the amount of $870 per week based on an AWW of $4,000, which she calculated under Section 309(c) of the Act (First Decision).[2] (*Id.* at 14a-16a.)

Claimant and Employer appealed WCJ Vallely's First Decision to the Board, which affirmed in part,[3] modified in part,[4] and remanded the matter to WCJ Vallely to make additional findings regarding the date of Claimant's disability and the description of Claimant's work-related injury.[5] (*Id.* at 33a.) On remand, WCJ Vallely issued a decision and order dated February 11, 2016, which was consistent with her First Decision, as amended by her First and Second Amended Decisions. (*Id.* at 36a.) Employer appealed to the Board, alleging that the Board and WCJ Vallely incorrectly calculated Claimant's AWW and the resulting total disability benefit rate. (C.R., Item No. 15.) The Board, without addressing the merits of

---

[2] On October 9, 2014, WCJ Vallely issued an amended decision and order, which included, *inter alia*, additional findings of fact establishing the date of Claimant's disability as well as the description of Claimant's work-related injury (First Amended Decision). (*Id.* at 20a.) On October 31, 2014, WCJ Vallely amended her decision and order, once more, to reflect a total disability benefit rate of $807 per week rather than $870 per week (Second Amended Decision). (*Id.* at 25a.)

[3] The Board affirmed WCJ Vallely's First Decision with respect to the conclusion that Claimant's AWW should be calculated pursuant to Section 309(c) of the Act and not Section 309(e) of the Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(e). (*Id.* at 30a-31a.)

[4] The Board modified WCJ Vallely's First Decision to correct her calculation of Claimant's AWW under Section 309(c) of the Act—*i.e.*, dividing Claimant's annual salary by 52 to yield an AWW of $3,846.15 instead of dividing Claimant's annual salary by 50 to yield an AWW of $4,000. (*Id.* at 31a.) In doing so, the Board noted that the modification to WCJ Vallely's calculation of Claimant's AWW did not change Claimant's compensation rate as it would still be $807 per week, the maximum compensation rate. (*Id.* at 31a n.1.)

[5] It appears that the Board was not aware that WCJ Vallely's First Amended Decision included findings of fact addressing the description of Claimant's work-related injury and the date of Claimant's disability.

3

Employer's appeal, remanded the matter to WCJ McTiernan[6] because the record was incomplete. On remand, both parties agreed that the record was complete but for two promotional videos, which were irrelevant to Employer's appeal, and WCJ McTiernan, therefore, closed the record. (WCJ McTiernan's Decision at 3.) By decision and order dated September 12, 2017, WCJ McTiernan granted Claimant's claim petition and directed Employer to pay Claimant temporary total disability benefits at the rate of $807 per week beginning August 9, 2008, based on an AWW of $3,846.15 per week. (*Id.* at 6.) In reaching this decision, WCJ McTiernan stated:

> I find [Claimant's] proposed calculation, as modified by the Opinion of the . . . Board, reflects a more accurate assessment of [Claimant's] [AWW] as it more accurately and realistically measures what [Claimant] could have expected to earn had he not been injured. The [C]ontract established the value of [Claimant's] services to . . . Employer prior to the accepted work related injury and is therefore the appropriate basis for calculating his [AWW] at the time of the August 8, 2008, work injury.

(*Id.* at 4.) Both Employer and Claimant appealed WCJ McTiernan's decision and order to the Board, which affirmed. Employer now petitions this Court for review.

On appeal,[7] the sole issue is whether WCJ McTiernan and the Board committed an error of law by calculating Claimant's AWW pursuant to Section 309(c) of the Act. Employer argues that WCJ McTiernan and the Board

---

[6] By this time, WCJ Vallely had retired, so the matter was reassigned to WCJ McTiernan.

[7] This Court's review is limited to a determination of whether an error of law was committed, whether findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

should have calculated Claimant's AWW pursuant to Section 309(e) of the Act,[8] because Claimant could not possibly play football throughout the year and is, therefore, a seasonal employee. Employer contends that pursuant to this Court's prior decision in *Ross v. Workers' Compensation Appeal Board (Arena Football League)*, 702 A.2d 1099 (Pa. Cmwlth. 1997), *appeal denied*, 724 A.2d 937 (Pa. 1998), all professional football players are seasonal employees. In response, Claimant contends that the Board properly calculated his AWW pursuant to Section 309(c) of the Act.

In order to determine whether WCJ McTiernan and the Board properly calculated Claimant's AWW pursuant to Section 309(c) of the Act or whether WCJ McTiernan and the Board should have calculated Claimant's AWW pursuant to Section 309(e) of the Act, we must first determine whether Claimant's employment was seasonal. Our courts have opined: "Seasonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it." *Am. Mut. Ins. Co. v. Workmen's Comp. Appeal Bd. (Davenport & Nat. Marble & Onyx Co.)*, 530 A.2d 121, 128 (Pa. Cmwlth. 1987) (quoting *Froehly v. T.M. Harton Co.*,

---

[8] Section 309(e) of the Act relates to the calculation of the AWW for exclusively seasonal employees and provides, in relevant part:

> [*I*]*n occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth of the total wages which the employe*[*e*] *has earned from all occupations during the twelve calendar months immediately preceding the injury*, unless it be shown that during such year, by reason of exceptional causes, such method of computation does not ascertain fairly the earnings of the employe[e], in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings.

(Emphasis added.)

5

139 A. 727, 730 (Pa. 1927)). "The inquiry centers on the character of the work rather than the period during which the business is open." *Keenan v. Workers' Comp. Appeal Bd. (Cocco)* (Pa. Cmwlth., No. 1061 C.D. 2014, filed July 10, 2015), slip op. at 6 (citing *Froehly*, 139 A. at 730).[9] In the context of professional sports, this Court has previously addressed whether a professional football player is a seasonal employee for purposes of Section 309(e) of the Act in both *Station v. Workmen's Compensation Appeal Board (Pittsburgh Steelers Sports, Inc.)*, 608 A.2d 625 (Pa. Cmwlth.), *appeal denied*, 615 A.2d 1315 (Pa. 1992), and *Ross*.

In *Station*, this Court considered whether a professional football player with the NFL was a seasonal employee for purposes of Section 309(e) of the Act. In that case, the employer drafted the claimant in 1986, and the claimant signed an NFL Player Contract in July 1986. The employer hired the claimant while he was recovering from back surgery; as a result, the claimant was unable to participate in games or practice until October 1986. The claimant eventually earned a place on the employer's active roster and played in a number of games, but he was later injured in practice and could no longer participate in games through the rest of the season. The employer paid the claimant his full salary through the remainder of his one-year contract—*i.e.*, December 21, 1986. The claimant participated in try-outs for the 1987 season but did not perform adequately, which resulted in his termination from employment. The claimant, no longer able to play professional football, filed a claim petition against the employer, alleging that the loss of his employment was

---

[9] Pursuant to section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

due to the injury he received during practice in November 1986. The referee[10] calculated the claimant's AWW pursuant to Section 309(c) of the Act and awarded the claimant benefits at the then-maximum compensation rate. Both the employer and the claimant appealed the referee's decision to the Board, which affirmed in all material respects. Thereafter, the claimant and the employer filed cross appeals to this Court.

This Court ultimately concluded that the claimant was a seasonal employee.[11] *Station*, 608 A.2d at 631. In coming to this conclusion, this Court considered the terms of the claimant's NFL Players' Contract, which provided: (1) players' obligations began at the start of the pre-season training camp and lasted until the regular season was complete; (2) players could not engage in off-season employment with another football team; (3) players were to be compensated after the completion of each game, starting with the first regular season game; and (4) players were not compensated outside of the regular season. Based on the terms of the NFL Players' Contract, this Court reasoned that the prohibition from playing football with other entities, thereby restricting the claimant from playing football throughout the year, was evidence that the claimant was a seasonal employee. *Station*, 608 A.2d at 629-30. This Court further reasoned that the employer's decision to fix players' compensation by completion of games, rather

---

[10] Prior to the 1993 amendments to the Act, Workers' Compensation Judges (WCJs) were referred to as "referees." *See King v. Workmen's Comp. Appeal Bd. (K-Mart Corp.)*, 664 A.2d 1087, 1088 n.1 (Pa. Cmwlth. 1995), *rev'd*, 700 A.2d 431 (Pa. 1997).

[11] Though this Court concluded that the claimant was a seasonal employee, the exceptional nature of the facts in that case led this Court to calculate the claimant's AWW pursuant to a prior version of Section 309(d) of the Act, which permitted alternative methods of calculating a claimant's AWW in exceptional cases for the sake of fairness to claimants. *Station*, 608 A.2d at 631.

than pay compensation yearly, monthly, or pursuant to any other temporal limits, also led to the conclusion that the claimant was a seasonal employee. *Id*. at 630.

Similarly, in *Ross*, this Court considered whether an Arena Football League (AFL) player was a seasonal employee for purposes of Section 309(e) of the Act. In that case, the employer hired the claimant as a professional football player, and the claimant entered into an AFL player agreement in May 1990. The claimant sustained an injury to his toe during pre-season training camp and ultimately injured the same toe once more during a post-season game in August 1990. The claimant filed a claim petition, and the employer accepted liability for the injury by issuing a notice of compensation payable. The employer later filed a review petition, arguing that the claimant's benefits were incorrectly calculated because the claimant was a seasonal employee. The WCJ granted the employer's petition and reduced the claimant's benefits pursuant to Section 309(e) of the Act. The claimant appealed the WCJ's decision to the Board, which affirmed. The claimant then petitioned this Court for review.

This Court affirmed the Board's decision, concluding that the claimant was a seasonal employee, and, therefore, his AWW should be calculated under Section 309(e) of the Act. In coming to its conclusion, this Court looked to the terms of the AFL player agreement and the seasonal nature of the AFL. This Court noted that the AFL operated on a seasonal basis and prohibited its players from playing football outside of the AFL player agreement. Consequently, regardless of the fact that football could be played through the year, AFL's football players were limited to playing football within a specified period. *Ross*, 702 A.2d at 1100-01. Further, this Court concluded that its prior decision in *Station* was instructive due to the similarities between the contracts in both cases. *Id*. at 1101. Similarly to the AFL

8

player agreement, the NFL Players' Contract in *Station* prohibited players from participating in football games outside of the league and specified that performance was limited to certain activities during the year. Both contracts also provided that players would begin to receive compensation only after they played a football game, and they would continue to receive compensation during the regular season only. This Court reasoned that given the similarities between *Station* and the case before it, the claimant was necessarily a seasonal employee. *Ross*, 702 A.2d at 1101.

Here, we simply cannot agree with Employer's contention that this Court's prior decision in *Ross* stands for the proposition that all professional football players are seasonal employees. Rather, it is clear that, in *Ross*, this Court considered the facts of the case, focusing on the claimant's contractual obligations, and determined that, based on those facts, *that specific claimant* was a seasonal employee. Thus, in this case, we must consider the facts and terms of the Contract to determine whether Claimant was a seasonal employee. In that regard, the term of employment under the Contract covered two football seasons, beginning by March 1, 2008, and ending on February 28, 2010, or February 29, 2010. (R.R. at 61a.) Claimant's performance obligations under the Contract were to attend all "mini-camp(s), official pre-season training camp, all [Employer] meetings and practice sessions, [and] all pre-season, regular season, and post-season football games scheduled for or by [Employer]," including any all-star football games sponsored by the NFL. (*Id*.) Claimant was also required to cooperate with the news media in order to promote the NFL. (*Id.*) Additionally, Claimant was required to attend ten assigned appearances per year on behalf of Employer. (*Id.* at 65a.) The terms of the Contract also prohibited Claimant from playing football outside of his employment. (*Id.* at 61a.) In exchange for performing these obligations, Employer

9

contracted to pay Claimant a *yearly* salary of $200,000 for the 2008 season and $230,000 for the 2009 season. (*Id*. at 61a.) Compensation was to be paid "in equal weekly or biweekly installments over the course of the applicable regular season period, commencing with the first regular season game played." (*Id*. at 62a.)

In the aforementioned cases *Ross* and *Station*, this Court concluded that the claimants were seasonal employees because: (1) the claimants could only play football in fixed periods of time—*i.e.*, in *Ross*, from training camp up until October of that AFL football season, and, in *Station*, from pre-season training camp through to regular season games; (2) the claimants were prohibited from engaging in football outside of the league during the regular or off season; and (3) the claimants began to receive compensation only after playing in a regular season game and, thereafter, were only compensated during the regular season.

Concerning the first salient contractual term in this Court's analyses in *Station* and *Ross*—*i.e.*, the claimants had to perform their obligations during a fixed and defined period of time—such a term is not present in this case. The terms of performance in the Contract mandated attendance at numerous appearances, required football players to cooperate with the news media to promote the NFL, and did not limit the performance of these activities to the regular football season. The lack of seasonal limitations with respect to performance of Claimant's obligations indicates that Claimant's employment was not seasonal.

In *Station* and *Ross*, in analyzing the second contractual term based on the specific facts in each matter, this Court viewed the term as a restriction on the football players' ability to *play football* and, therefore, determined that because the football players could not *play football* throughout the year, they were necessarily seasonal employees. Here, focusing on the totality of the circumstances in this

10

matter, the second contractual term seems to assert control over Claimant outside of the regular season. This is evident especially in light of the multitude of activities Claimant and other football players are expected to engage in pursuant to the first contractual term discussed in the preceding paragraph. Both *Station* and *Ross* seem to pertain to contracts in which employees are generally not required to engage in any activity outside of the game of football. Accordingly, in this case we interpret the limitation on Claimant's ability to play football outside his employment as an indication that Claimant's employment is not seasonal.

The third contractual term listed in the preceding paragraph—*i.e.*, the claimants received compensation only after playing in a regular season game and, thereafter, were only compensated during the regular season—is present in the Contract. When read with other terms in the Contract, however, the clause indicates that Claimant is not a seasonal employee. The Contract makes it clear that Employer would pay Claimant a *yearly* salary in exchange for performance of *all* obligations under the Contract, which includes media appearances, performance of which was not limited to the regular football season. The fact that compensation is received only throughout the regular season does not limit players' obligations to the regular season; especially where, as here, players are explicitly paid for performance of *all* obligations under the Contract. Additionally, unlike the NFL Players' Contract in *Station*, Claimant contracted to receive payment in weekly or biweekly installments, not just after playing each regular season game. Accordingly, the terms of the Contract indicate that Claimant is not a seasonal employee but an employee whose wages are fixed by the year. We, therefore, conclude that the Board did not commit an error of law by calculating Claimant's AWW pursuant to Section 309(c) of the Act.

11

Based on the above discussion, we affirm the Board's order.

                                     _____

                                     P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Pittsburgh Steelers Sports, Inc.,     :
                    Petitioner     :
                                 :
          v.                     :    No. 1257 C.D. 2018
                                 :
Workers' Compensation Appeal     :
Board (Trucks),                    :
               Respondent     :

# **O R D E R**

AND NOW, this 3rd day of January, 2020, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

<div align="center" style="margin-top:2em;">
_____<br>
P. KEVIN BROBSON, Judge
</div>