# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jared Caldwell,                  :
          Petitioner      :
                       :  No.  498 C.D. 2024
                       :
         v.              :
                       :  Argued:  March 4, 2025
Towanda (Workers' Compensation  :
Appeal Board),               :
          Respondent     :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MATTHEW S. WOLF, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                **FILED:  March 26, 2025**

Jared Caldwell (Claimant) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) in favor of Towanda (Employer).  On appeal, Claimant contends, _inter alia_, he was not a seasonal employee and that he suffered a right neck injury.  We vacate in part, dismiss in part, affirm in part, and reverse in part the Board's decision, and we remand with instructions.

## I. BACKGROUND[1]

Employer runs an overnight summer camp for children, which provides various outdoor activities.  Claimant contracted with Employer to be an excursion director for ten weeks starting June 1, 2021.  The parties' contract required Claimant

---

[1] Unless otherwise stated, we state the background based on the WCJ's and Board's decisions, which are supported by substantial evidence.  _See_ WCJ Op., 5/19/23; Bd. Op., 4/3/24.

to supervise and live with a group of campers but did not specify any particular work duties. *See generally* Ex. C-11 (employment contract).[2] Instead, the parties' contract obligated Claimant to perform "any and all" assigned duties, which "may be modified by" Employer. *Id.*

Claimant and Employer testified about their understanding of Claimant's work duties as an excursion director. Claimant testified live that his job duties included participating in hikes and overnight trips and using the rock-climbing tower as part of Employer's outdoor adventure program. On any given day, he would hoist safety equipment, kayaks, and other gear weighing between 10 to 150 pounds up the tower. At other times of the year, Claimant also led mountaineering excursions in Oregon, both in late summer as well as in the winter months. Claimant maintained that he could be an excursion director year-round.

Mitchell Reiter, owner and director of Employer, disagreed that Claimant could be an excursion director year-round. N.T. Reiter Dep., 9/30/22, at 15 (answering in the negative to the question of whether an excursion director could work "at any other time other than the summer"). In Reiter's view, this was a "trick question" because this was a "summer position, summer job. It's not a year-round job." *Id.* Reiter denied employing any full-time, year-round excursion directors.

Reiter, however, generally agreed with Claimant's description of his work duties. Reiter added that other outdoor activities included challenge courses, building campfires, archery, nature hikes, and leading canoe trips. In addition to Claimant's job-specific duties, Reiter noted that all employees participated in certain common duties, including supervising the children and helping out as needed, *e.g.*,

---

[2] The parties' contract incorporated by reference a "Staff Guide," which was not part of the record. Although the contract stated that Claimant's title was "Excursion Leader," the parties also interchangeably used the title "Excursion Director." Notes of Testimony (N.T.) Hr'g, 8/18/22. The parties and record do not distinguish the two titles.

2

at the canteen, doing laundry, playing pickup games, or mowing the lawn. Reiter stated that employees "have a lot of flexibility in their" job. *Id.* at 10.

On June 16, 2021, Claimant was descending the rock-climbing tower when he fell approximately ten feet and injured his right back and right neck, although the parties dispute Claimant's neck injury. Claimant visited the infirmary that day. However, his symptoms worsened, and he returned home to Colorado.

Claimant unsuccessfully requested total disability benefits from Employer. Claimant then filed contested claim and penalty petitions. The parties stipulated that Claimant suffered from right neck pain but that Employer could litigate the description of the work injury.

An independent medical examination (IME) and several WCJ hearings ensued, at which Claimant presented the trial deposition of Dr. Stephen Shogan and the IME report by Dr. Jeffrey Sabin, which we detail below. Generally, the IME report found Claimant suffered from right neck radiculitis and right leg radiculopathy. Claimant's counsel also presented his resume, bills, and four affidavits from other counsel in support of his contention that his $395 hourly rate was reasonable for workers' compensation matters in northeastern Pennsylvania.

The WCJ granted the claim petition and partially granted the penalty petition with an award of counsel fees. The WCJ described Claimant's work injury as, *inter alia*, severe right neck pain and right leg radiculopathy.[3] The WCJ held that Claimant was a seasonal employee and reduced counsel's hourly rate from $395 to $200, based on the WCJ's personal knowledge of the prevailing hourly rates for workers' compensation matters in northeastern Pennsylvania. The WCJ did not award statutory interest and made no credibility findings despite the parties'

---

[3] The parties do not dispute Claimant's other work injuries, which included a thoracic sprain/strain.

3

conflicting testimony on when Claimant could be an excursion director. The WCJ did not cite any law or explain its holding that Claimant was a seasonal employee.

Both Claimant and Employer appealed to the Board, which issued a mixed decision partially adverse to Claimant. In relevant part, the Board reversed the WCJ's description of Claimant's work injury to the extent it included severe right neck pain and right leg radiculopathy. The Board affirmed the WCJ's reduction of Claimant's counsel's hourly rate to $200. The Board modified the WCJ's decision to include statutory interest on Claimant's benefits, penalties, and other expenses.[4]

The Board also affirmed the WCJ's determination that Claimant was a seasonal employee. The Board reiterated the WCJ's conclusion that "nowhere in [Claimant's] employment contract was it stated that Claimant's job was to be anything more than seasonal employment and [the WCJ] found Claimant to be a seasonal employee." Bd. Op. at 17. The Board acknowledged that although the WCJ "did not render any express credibility determinations," the WCJ must have rejected Claimant's testimony that he could work year-round. *Id.* ("The logical corollary of [the WCJ's] conclusion is that Claimant's opposing testimony, that the position of excursions director was not strictly a summertime position, was not credible.").

Claimant timely appealed to this Court.

## II. ISSUES[5]

Claimant raises four issues. First, Claimant asserts that the Board erred by holding that Claimant was a seasonal employee. Claimant's Br. at 4. Second, notwithstanding the Board's award of statutory interest, Claimant argues the WCJ

---

[4] Employer challenged, *inter alia*, the WCJ's decision granting Claimant's penalty petition, which the Board affirmed adverse to Employer. Further, as we detail below, notwithstanding the Board's award of statutory interest, Claimant raises the issue on appeal to this Court.

[5] Claimant raises four issues, but the argument portion of his appellate brief is divided into three sections, which violates Pa.R.A.P. 2119(a). *See* Pa.R.A.P. 2119(a) (mandating that the "argument shall be divided into as many parts as there are questions to be argued").

erred by not awarding such interest. *Id.* Third, Claimant maintains that the Board should have reversed the WCJ's reduction of counsel's hourly rate. *Id.* Fourth, Claimant asserts that the Board erred by reversing the WCJ's finding that Claimant suffered a right neck injury. *Id.*

### III. DISCUSSION[6]

### A. Seasonal Employee

In support of his first issue, Claimant argues that although Employer was a summer camp, he was *not* a seasonal employee. *Id.* at 14. He was not a seasonal employee, Claimant maintains, because he could perform his job year-round "at a seasonal location." *Id.* In Claimant's view, the lower tribunals erred by not examining whether he could perform his job year-round. *Id.* at 14-18 (analogizing to *Froehly v. T.M. Harton Co.*, 139 A. 727 (Pa. 1927)). Claimant argues that because he could perform his job year-round, he necessarily was not a seasonal employee. *Id.* at 21. Per Claimant, because he could (and did) lead "children on

---

[6] Our review is limited to determining whether there was (1) a violation of constitutional rights; (2) an error of law; (3) a violation of agency procedures; and (4) substantial evidence of record supporting affirmative findings of fact. *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 485 (Pa. 2002). We also consider whether the factfinder capriciously disregarded "material, competent evidence," particularly when a factfinder relies on negative findings, *i.e.*, findings based on a disbelief of a claimant's uncontradicted evidence. *Id.* at 484, 487. A capricious disregard exists "if the agency expressly refused to resolve conflicts in the evidence and make essential credibility determinations." *Id.* at 486 & n.11 (citing, *inter alia*, *In re Patterson's Est.*, 3 A.2d 320, 321 (Pa. 1939) (citing *In re Pusey's Est.*, 184 A. 844 (Pa. 1936)); *accord Better Bets Ventures, LLC v. Pa. Gaming Control Bd.*, ___ A.3d ___, ___ (Pa., No. 27 MAP 2024, filed Mar. 20, 2025) (*Better*), 2025 WL 864239, *13, slip op. at 30. The *Pusey* Court explained that a capricious disregard or "disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a [willful], deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth." *Pusey*, 184 A. at 850. Necessarily implicit is the requirement that a factfinder render a credibility determination. *See id.*; *Marlowe*, 812 A.2d at 486. The *Marlowe* Court emphasized that this "limited aspect of the review . . . is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority." *Marlowe*, 812 A.2d at 487-88.

5

rock-climbing" and other wilderness excursions year-round, he was not a seasonal employee. *Id.* at 9-10, 22.

Employer distinguishes *Froehly* by emphasizing the 24/7 nature of Claimant's job duties as an excursion director of an overnight summer camp. Employer's Br. at 16-19, 22. Per Employer, a dishwasher that worked for a seasonal amusement park can work "anytime, anywhere" as a dishwasher. *Id.* at 22. However, unlike a dishwasher, Employer maintains that an excursion director working at an overnight summer camp can only work at an overnight summer camp. *Id.* In Employer's view, Claimant's job duties were "not incidental to the seasonal enterprise." *Id.* Employer also emphasizes that the WCJ implicitly rejected Claimant's testimony that his job could be performed year-round as "not credible." *Id.* at 20 (quoting Bd. Op. at 17). Even if credible, per Employer, Claimant "failed to adduce any evidence" proving his job could be done year-round. *Id.* at 22.[7]

Generally, an injured employee may be entitled to workers' compensation benefits. 77 P.S. §§ 1, 411.[8] The amount of an employee's benefits depends on several factors, including whether the employee is considered a seasonal employee. *Id.* § 582. A seasonal employee's benefits are calculated differently to "ascertain fairly" the employee's annual earnings. *Id.*

The Act does not define an "exclusively seasonal" job. *Toigo Orchards, LLC v. Workers' Comp. Appeal Bd. (Gaffney)*, 156 A.3d 407, 413 (Pa. Cmwlth. 2017) (distilling caselaw). The *Gaffney* Court explained that "[s]easonal occupations

---

[7] *But see* WCJ Op. at 8 (summarizing Claimant's testimony that he could perform such duties year-round).

[8] The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 735, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, provides section numbers that "are distinct from, but correspond to, the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). "For clarity, we will refer to provisions of the [Act] only by their Purdon's citation." *Id.*

6

logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it." *Id.* (cleaned up). "[L]abor or occupation possible of performance and being carried on at any time of the year, or through the entire twelve months, is certainly not seasonal." *Id.* (cleaned up). Nonseasonal jobs include (1) a dishwasher or assistant manager working at a summer amusement park; (2) a laborer who installs and removes cloth awnings; and (3) a professional football player who contractually receives an annual salary for, *inter alia*, non-seasonal obligations, such as media appearances. *Id.* at 413-15 (collecting cases); *Pittsburgh Steelers Sports, Inc. v. Workers' Comp. Appeal Bd. (Trucks)*, 224 A.3d 442, 448 (Pa. Cmwlth. 2020) (*en banc*) (*Steelers*). In contrast, seasonal jobs include (1) playing professional arena football under a contract to play arena football only during the season and not play for another team or in the off-season; (2) picking hops and peaches; and (3) making maple syrup. *Gaffney*, 156 A.3d at 413-14 (discussing, *inter alia*, *Ross v. Workers' Comp. Appeal Bd. (Arena Football League)*, 702 A.2d 1099 (Pa. Cmwlth. 1997)); *Froehly*, 139 A. at 730 (explaining that harvesting hops and peaches can only occur when they are ripe, and making maple sugar can occur only for an average of 60 days in the springtime).[9]

In *Froehly*, our Supreme Court criticized the employer for confusing "the character of work—dishwashing—performed by claimant, with the seasonal period during which the amusement park remained open to the public." *Froehly*, 139 A. at 730. The Court noted that employers who operate or control a seasonal amusement park necessarily require labor incidental to the business itself: washing

---

[9] The trial court's opinion for *Froehly* quoted a workers' compensation treatise defining seasonal occupation. *Froehly v. Harton Co.*, 75 Pitts L.J. 365, 367-68 (C.C.P. Allegheny Cnty. 1927) ("Any occupation which affords no employment regularly during certain seasons of the year or at regular set times during the year would be seasonal occupation. Logging, lumbering and coal mining under certain conditions are a few examples of this case of occupation." (cleaned up)).

7

dishes, cooking, and cleaning—all occupations necessary for the park to run but also occupations that do not require a seasonal amusement park. *Id.*

Looking to precedent in other jurisdictions, the *Froehly* Court found a New York case persuasive. *Id.* (discussing *Kapler v. Camp Taghconic*, 213 N.Y.S. 160 (N.Y. App. Div. 1926)). In *Kapler*, a summer camp employee "drowned in a lake on the camp premises, while assembling children who were in the lake and ordering them to the shore." *Id.* (summarizing *Kapler*). The *Kapler* Court reversed the lower court's holding that the employee was a seasonal employee. *Id.* The Court reasoned that "perhaps the nature of this camp for children and the nature of his duties were such that it would have been impracticable for him to perform the same duties, except during the summer months. However, the fact that this camp may have been operated only in the summer is not necessarily controlling." *Id.* (cleaned up). Instead of focusing on whether the camp operated during the summer, the *Kapler* Court emphasized "the nature of the instruction [the employee] was giving, and what he might have earned annually in the same employment, although not necessarily for the same employer." *Id.* (cleaned up). Thus, the *Froehly* Court rejected, as controlling, "the period of time during which the park remained open to the public . . . ." *Id.* at 728.

Building on the *Froehly* framework, in *Gaffney*, we held that a temporary tractor driver during the apple harvest was not a seasonal employee. *Gaffney*, 156 A.3d at 414-15. We reasoned that the claimant "was engaged in itinerant agricultural labor" and thus could drive a tractor "for pay throughout the year" to harvest crops. *Id.* The Court conceded that "it is hard to imagine employment that would be classified today as exclusively seasonal, if itinerant agricultural workers

8

are not so classified."[10] *Id.*

More recently, in *Steelers*, the claimant was a professional football player who was injured while playing professional football. *Steelers*, 224 A.3d at 443. Per the claimant's employment contract, in addition to playing football, the claimant was obligated "to attend ten assigned appearances per year" and could not participate in football or related activities for any other employer. *Id.* The WCJ and Board reasoned that the claimant was not a seasonal employee, and the employer appealed to this Court. *Id.* at 444-45. The employer argued that because the claimant "could not possibly play football throughout the year," the claimant was a seasonal employee. *Id.* at 445.

In resolving whether a professional football player was a seasonal employee, the *en banc* Court focused on two aspects of the claimant's contract: (1) the scope of his duties; and (2) the span of time within which the claimant had to perform his duties. *Id.* at 447-48. Because the contract obligated the claimant to perform certain duties outside of playing football and outside of the football season, the *Steelers* Court held that the claimant was not a seasonal employee. *Id.* at 448 (distinguishing the arena football contract in *Ross*, which did not obligate the claimant to participate in non-football activities outside of the five-month arena football season).[11]

Instantly, like the *Steelers* Court, we examine the parties' employment contract to resolve Claimant's work duties and the length of his employment. *See id.* at 447-48. With respect to his work duties, the parties' employment contract does

---

[10] The *Gaffney* Court did not address how itinerant agricultural laborers who picked hops or peaches were not seasonal employees, as such laborers could apparently harvest other seasonal crops.

[11] Apparently, we have not addressed whether a geographic limitation applies in defining a seasonal occupation.

9

not specify Claimant's work duties as an excursion director. *See generally* Ex. C-11 (employment contract). The parties' contract generally required Claimant to perform "any and all" duties at Employer's discretion for ten weeks. *See id.*

The parties' contract, however, also did not prevent Claimant from working as an excursion director during other seasons. *Compare Steelers*, 224 A.3d at 444-45 (noting that under the contract, the professional football player was employed year-round for, *inter alia*, non-football duties), *with Ross*, 702 A.2d at 1100-01 (stating that the arena football player was contractually employed for football-related activities for several months and could not play for another team or in the off-season). Thus, to paraphrase the *Steelers* Court, the factfinder had to consider the facts of this case, focus on Claimant's contract, and determine whether, based on those facts, Claimant was a seasonal employee. *See Steelers*, 224 A.3d at 447 (summarizing *Ross*). Specifically, the factfinder had to address whether Claimant could perform his work duties as an excursion director *only* during the ten-week season, much like the arena football player who was contractually obligated to play football for five months or the agricultural worker who could only harvest particular crops. *See Ross*, 702 A.2d at 1100; *Froehly*, 139 A. at 727, 730 (instructing the factfinder to resolve whether the claimant's job duties could be "carried on at any time of the year, or through the entire twelve months").[12]

Although the parties' contract defined the length of Claimant's employment, it did not specify Claimant's work duties as an excursion director. Claimant and Employer thus testified as to their understanding of Claimant's work duties. On one hand, Claimant testified that he could and did perform such job duties

_____

[12] To be clear, the fact that an employer operates only for 60 days, 10 weeks, or 5 months is not dispositive—it is whether the claimant could perform his work duties only while the employer is in operation. *See Gaffney*, 156 A.3d at 413.

10

year-round. On the other hand, although Employer generally agreed with Claimant's description of his work duties, Employer testified that Claimant could not be an excursion director outside of the summer. The WCJ and Board agreed with Employer's testimony that Claimant could only perform his work duties during the summer.

Despite Employer's general agreement with Claimant's description of his work duties, the WCJ and Board, however, did not explain why Claimant could not perform his duties during a different season. *See generally Froehly*, 139 A. at 730; *Gaffney*, 156 A.3d at 413. The WCJ's opinion similarly reflects no application of the *Froehly/Steelers* framework in its conclusion of law. More troubling, the Board seemingly rejected well-settled caselaw by focusing on the seasonal nature of Employer's summer camp. Bd. Op. at 17. By focusing on the seasonal nature of Employer's summer camp, the WCJ and Board have ostensibly abandoned the *Froehly*/*Steelers* framework—particularly the Board, which cited *Froehly*. *See id.*

Under the circumstances, we vacate the Board's decision on this issue and remand to the Board to resolve whether Claimant is a seasonal employee based on the facts adduced at the WCJ hearing.[13] Employer, after all, generally agreed

---

[13] *See Commonwealth v. Crawley*, 924 A.2d 612, 615-16 (Pa. 2007) (holding that the court's application of a legal definition of a mental state to the facts adduced at a hearing is a mixed question of law and fact). It follows that the tribunal's application of a legal definition of seasonal employment based on the facts before the WCJ is also a mixed question. *See id.*

Relatedly, 77 P.S. § 855 empowers the Board to hear appeals based on "an alleged error of law." 77 P.S. § 855. However, we have construed 77 P.S. § 855 as standing for the proposition that the Board has "the final authority to make conclusions of law which are then subject to appeal to this" Court. *Carmen Paliotta Gen. Constr. v. Workers' Comp. Appeal Bd. (Tribuzio)*, 528 A.2d 274, 278 (Pa. Cmwlth. 1987). This language suggests that the Board may have authority to resolve an appropriate mixed question of fact and law without further remand to the WCJ.

Under similar circumstances, we have remanded for clarity. *See Pa. State Univ. v. Ward (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1425 C.D. 2021, filed Feb. 22, 2023), 2023 WL 2149695, *6 (noting that "because the WCJ denied relief, we could intuit that the WCJ found not credible" the claimant's testimony but remanding for clarification of the WCJ's credibility

11

with Claimant's description of his work duties. Nevertheless, we recognize that the WCJ failed to render explicit credibility findings. *See* 77 P.S. § 834.[14] On remand, the Board has the option of vacating the WCJ's decision on this issue and remanding to the WCJ for credibility findings, findings of fact, and conclusions of law. *See id.* §§ 834, 855.[15]

### B. Statutory Interest

For his second issue, Claimant concisely argues that the WCJ erred by not awarding statutory interest. Claimant's Br. at 30-31. Claimant acknowledges that Employer actually "paid statutory interest" but nevertheless "protectively" raised the issue. *Id.* at 13 n.2. Employer, in similar fashion, succinctly counters that Claimant's issue is moot because the Board modified the WCJ's decision to reflect statutory interest. Employer's Br. at 36-37.

We agree with Employer. The Board explicitly modified the WCJ's opinion "to reflect Claimant's entitlement to interest in accordance with the" Act. Bd. Op. at 21 n.6. Claimant's issue is moot. *See* Claimant's Br. at 13 n.2; *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014); *City of Phila. v. Leverett*, 324 A.3d 703, 708 (Pa. Cmwlth. 2024). Further, Claimant did not argue any exception to the mootness doctrine. *See generally* Claimant's Br. However, because we must vacate in part and remand, the *amount* of statutory interest may

---

findings). We may cite to unreported cases as persuasive authority. Pa.R.A.P. 126.

[14] *See also Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003) (explaining that when a witness has testified via trial deposition, a WCJ's "resolution of the conflicting evidence cannot be supported by a mere announcement" that one witness was more credible than another witness). Reiter testified via trial deposition.

[15] For example, in order to resolve the mixed question of whether Claimant is a seasonal employee, the Board may believe it necessary to have the WCJ elaborate on why Claimant's testimony was not credible, *i.e.*, an excursion director at an overnight spring, fall, or winter camp for children could not lead nature hikes, hoist equipment up a rock-climbing tower, participate in challenge courses, build campfires, lead canoe trips, and generally supervise children. *See* 77 P.S. § 834; *Pusey*, 184 A. at 850.

12

change.  The parties and tribunals may, as needed, address the amount.

### C. Counsel's Hourly Rate[16]

Claimant argues the Board erred by affirming the WCJ's reduction of counsel's hourly rate from $395 to $200.  Claimant's Br. at 31.  Claimant primarily relies on the affidavits, bills, and counsel's resume, which Claimant construes as proving the reasonableness of counsel's rate.  *Id.* at 32-34.  Further, Claimant argues that Employer waived the issue by not timely objecting before the WCJ.  *Id.* at 34-35 (citing 34 Pa. Code § 131.55(d)).

Employer counters that it objected to Claimant's counsel's hourly rate before the WCJ.  Employer's Br. at 39.  On the merits, Employer reiterates the WCJ's explanation that $395 was an atypical hourly rate for northeastern Pennsylvania and reflected the hourly rates charged by Philadelphia-based counsel.  *Id.* at 37-38.  None of Claimant's hourly-rate evidence, per Employer, were for workers' compensation cases.  *Id.* at 38.

The Act "provides that when an employer unreasonably contests a claim, the employe . . . in whose favor the matter at issue has been finally determined in whole or in part shall be awarded a reasonable sum for costs incurred for attorney's fee[s]."  *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.)*, 770 A.2d 318, 322 (Pa. 2001) (cleaned up); 77 P.S. § 996(b).  The Act and regulations do *not* require an application or response.  77 P.S. § 996(b); 34 Pa. Code § 131.55(d)-(e).[17]  Thus, a

---

[16] We review an award of counsel fees for an abuse of discretion, which includes an error of law.  *Arches Condo. Ass'n v. Robinson*, 131 A.3d 122, 132-33 (Pa. Cmwlth. 2015); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 974 (Pa. Super. 2011) (*per curiam*); *Hangey v. Husqvarna Pro. Prods., Inc.*, 304 A.3d 1120, 1150 (Pa. 2023).

[17] 77 P.S. § 996(b) follows:

(b) If counsel fees are awarded and assessed against the insurer or employer, then the workers' compensation judge must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of

13

"WCJ must award attorney's fees to a claimant who is victorious over an employer who has presented an unreasonable contest, whether the claimant asked for such fees or not." *Ramich*, 770 A.2d at 322.

A WCJ also decides "what constitutes a reasonable fee. In doing so, the . . . WCJ may, of course, take into account any fee agreement between the attorney and claimant, the legislative declaration of reasonableness, as well as the other factors discussed in our cases." *Lawson v. Workers' Comp. Appeal Bd. (Temple Univ.)*, 857 A.2d 222, 225-26 (Pa. Cmwlth. 2004) (cleaned up); *see* 77 P.S. § 996; *Vitac Corp. v. Workers' Comp. Appeal Bd. (Rozanc)*, 854 A.2d 481, 486 (Pa. 2004). One factor may be the judge's personal knowledge of hourly counsel rates. *Robinson*, 131 A.3d at 131, 133 (holding trial court did not abuse its discretion in awarding counsel fees based on, *inter alia*, the court's "particular knowledge of the rate of professional compensation usual at the time and place" (cleaned up)).[18] If

_____

the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. § 996(b). The regulation states that an "opposing party *may* file a response" in opposition to a claimant's application for fees. 34 Pa. Code § 131.55(d) (emphasis added). Further, a "decision on the fee award will be made based on the record of the case and, *if filed*, the application and response. If deemed appropriate by the judge, a hearing may be held and evidence presented." *Id.* § 131.55(e) (emphasis added); *see generally* 32 Pa. B. 6043 (2002) (discussing the original draft and responsive comment).

[18] More common, however, is evidence of the hourly rate, particularly in rebuttal. *See Braun*, 24 A.3d at 973; *Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 294 (Pa. Super. 2005); *see also Mulero v. Walsh* (M.D. Pa., No. 3:15-cv-1406, filed Feb. 28, 2018), 2018 WL 1084235, *13 (rejecting $400 hourly rate for civil rights counsel in the Wilkes-Barre-Scranton area because, *inter alia*, the declarations failed to provide the *declarants'* hourly rates and thus were not "not particularly helpful" in establishing a reasonable rate); *Shane T. ex rel. Cathy K. v. Carbondale Area Sch. Dist.* (M.D. Pa., No. 3:16-964, filed Sept. 30, 2021), 2021 WL 4478237, *7 (rebuffing hourly rates of $475-$525 as not reflective of counsel rates in northeastern Pennsylvania).

substantial evidence exists, *i.e.*, "the record substantially supports a finding as to the amount of time and effort actually expended by the claimant's attorney, then the WCJ may enter the award." *Ramich*, 770 A.2d at 322. If the WCJ disbelieves uncontradicted evidence of hourly rates in awarding fees, then we review the WCJ's order for a capricious disregard. *Marlowe*, 812 A.2d at 487; *Better*, 2025 WL 864239, *13, slip op. at 30.

Instantly, we disagree with Claimant that Employer waived the issue. Employer accurately notes that it timely objected to the hourly rate and was not required to file a response. *See* N.T., 12/22/22, at 15; 34 Pa. Code § 131.55(d)-(e). Claimant correctly points out, however, that Employer did not proffer any evidence rebutting Claimant's proposed rate of compensation. *Id.*

In support of his proposed rate, Claimant presented the affidavits of Sindey L. Gold, Esq., and Arthur L. Bugay, Esq., which averred that counsel's $395 rate was "reasonable in light of the local market . . . ." Aff. of Gold, 6/22/22, ¶ 6; Aff. of Bugay, 6/22/22, ¶ 10. E. Douglas DiSandro, Jr., Esq., and Evan K. Aidman, Esq., averred that they were familiar with the hourly rates of lawyers in the greater Philadelphia area and that counsel's $395 hourly rate was reasonable. Aff. of DiSandro, 6/23/22, ¶¶ 6, 8; Aff. of Aidman, 6/22/22, ¶¶ 7, 9. The WCJ, however, rejected Claimant's uncontradicted evidence of allegedly reasonable hourly rates and relied on his own personal knowledge of reasonable hourly rates for workers' compensation matters in northeastern Pennsylvania. WCJ Op. at 11.

The WCJ was free to reject Claimant's uncontradicted evidence, including the four affidavits, because it did not address the reasonable hourly rate for workers' compensation matters in northeastern Pennsylvania. *Cf. Mulero*, 2018 WL 1084235, *13. For example, the Gold and Bugay affidavits vaguely referred to

15

a "local market" without specifying northeastern Pennsylvania. *See* Aff. of Gold, ¶ 6; Aff. of Bugay, ¶ 10. The DiSandro and Aidman affidavits averred to the reasonable rates in Philadelphia, which is not northeastern Pennsylvania. *See* Aff. of DiSandro, ¶¶ 6, 8; Aff. of Aidman, ¶¶ 7, 9. Accordingly, because none of Claimant's evidence addressed the reasonable hourly rates for workers' compensation matters in the region, the WCJ could—and did—rely on his personal knowledge in discounting Claimant's suggested hourly rate to $200. WCJ Op. at 11; *see Robinson*, 131 A.3d at 131. The WCJ could not capriciously disregard Claimant's uncontradicted evidence when such evidence was insufficient. *See Robinson*, 131 A.3d at 131, 133. Thus, we discern neither an abuse of discretion nor an error of law by the WCJ and the Board. *See id.*; *Marlowe*, 812 A.2d at 487.[19]

### D. Right Neck Pain

Before summarizing the parties' arguments, we detail the parties' stipulation and the evidence. As noted above, the parties stipulated that Claimant suffered from, *inter alia*, right neck pain, specifically "right sided cervical radiculitis." Ex. D-8, ¶ 3; WCJ Op. at 4; Bd. Op. at 1. Similarly, the IME report stated that following review of the post-accident magnetic resonance imaging (MRI), Dr. Sabin opined that Claimant suffered from "radiculitis right upper extremity from the cervical spine," *i.e.*, severe right neck pain. Ex. C-10, at 18-19.[20]

---

[19] Further, none of the declarants averred to their own hourly rates, let alone rates in workers' compensation matters. *See, e.g.*, *Mulero*, 2018 WL 1084235, *13.

[20] In relevant part:

> Although the patient currently does not complain of significant neck pain, neck pain is noted in the medical records (concomitant with the thoracic pain) after the subject fall associated with RIGHT upper extremity symptoms. The MRI report, post subject accident supports severe RIGHT C6-7 foraminal stenosis, [*i.e.*, cervical (neck) pain] which is slightly more cranial than one would expect with ulnar nerve symptoms. Still, this could correlate with the ulnar nerve symptoms secondary to anatomic variations.

16

The WCJ held that Claimant presented sufficient evidence of his right neck pain. WCJ Op. at 9 (describing the work injury as "an L4-5 disc herniation on the right, a thoracic sprain/strain, and radiculitis in the upper extremity"), 11 ("an L4-5 disc herniation on the right, a thoracic sprain/strain, radiculitis right upper extremity, severe right C6-7 foraminal stenosis, and right leg radiculopathy").

The Board, however, disagreed, reasoning that although the IME report "mentioned" these conditions, the report did not "definitively include the conditions in" describing Claimant's injury. Bd. Op. at 15. The Board emphasized that the IME report failed to "definitively include" right neck (and leg) pain in describing the work injury. *Id.* Thus, the Board reversed the WCJ to the extent the WCJ defined Claimant's work injury as right neck (and leg) pain. *Id.*[21]

Turning to the parties' arguments, Claimant concisely claims the Board's reversal was error, primarily relying on the IME report. Claimant's Br. at 23. In Claimant's view, because Employer presented no contrary evidence, he met

> The above 3 issues, lumbar, thoracic, and cervical/radicular would be considered secondary to the subject accident based on the medical record review documenting a 11 month hiatus where by no symptoms are being noted in the records for the cervical/thoracic area, and then a 1-1/2 year hiatus noted for any back or leg issues. Therefore, *there would be support for a direct correlation to the subject accident*.

Ex. C-10, at 18 (emphasis added); *id.* at 19 (explicitly defining the work-related injury as "an L4-5 herniated disc on the right and a thoracic sprain/strain and, within reasonable degree of medical probability, radiculitis right upper extremity from the cervical spine," *i.e.*, right neck pain (cleaned up)); *see generally, e.g.*, *Woodard v. Chatterjee*, 827 A.2d 433, 436 (Pa. Super. 2003) (explaining that cervical radiculopathy is neck pain, specifically "nerve pain that travels"); *Amazon.com Servs. LLC v. Roman (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 185 C.D. 2022, filed Dec. 1, 2022), 2022 WL 17347499, *2 (defining pain as radiculitis).

[21] Specifically, the Board reasoned that the WCJ "added severe right C6-7 foraminal stenosis and right leg radiculopathy. Although Dr. Sabin mentioned the conditions in describing what was seen on diagnostic study, he did not, in his statement of opinion, definitively include the conditions in the description of injury. We therefore reverse the WCJ's determination to the extent he included severe right C6-7 foraminal stenosis and right leg radiculopathy in the injury description." Bd. Op. at 15.

17

his burden of proving a work-related, right neck injury. *Id.* at 24. Employer disagrees, claiming that Claimant's doctor did not include right neck (and leg) pain as a work-related injury. Employer's Br. at 27. Employer succinctly opines that the Board correctly limited the scope of Claimant's work injury. *Id.* at 29.[22]

Instantly, we disagree with the Board to the extent it opined that the IME report did not "definitively include" right neck pain as part of Claimant's work-related injury. *See* Bd. Op. at 15. The IME report explicitly stated that Claimant's work-related injury resulted in right neck pain based on, *inter alia*, the post-accident MRI. *See, e.g.*, Ex. C-10, at 18-19 (opining Claimant suffers from "radiculitis right upper extremity from the cervical spine"). Indeed, the parties had stipulated that Claimant suffered from right neck pain, albeit without prejudice to Employer to challenge the work injury. Ex. D-8, ¶¶ 3-4 (stating that Claimant suffers from "right sided cervical radiculitis"). In sum, the WCJ correctly found that Claimant's work injury included right neck pain based on substantial evidence of record, and the Board erred in holding otherwise. *See Marlowe*, 812 A.2d at 485.

## IV. CONCLUSION

For these reasons, we vacate in part, dismiss in part, affirm in part, and reverse in part the Board's decision, and we remand to the Board with instructions. First, we vacate the Board's decision to the extent it held that Claimant was a seasonal employee. Second, we dismiss Claimant's statutory interest claim as moot

---

[22] To be clear, Claimant challenges *only* the Board's reversal of his right neck injury; he does not challenge the removal of right leg radiculopathy from the description of his injury. *See generally* Claimant's Br. Because Claimant does not challenge that aspect of the Board's decision, we cannot address it even if the Board was wrong. *See Four Seasons Logging, LLC v. Dep't of Lab. & Indus. (Off. of Unemployment Comp. Tax Servs.)*, 308 A.3d 345, 351 (Pa. Cmwlth. 2024); *see generally* N.T. Shogan Dep., 12/1/21, at 19-21 (testifying about Claimant's right, lower back injury, which results in compression of leg nerves), 23-24 (relaying that Claimant's leg pain "significantly improved following surgery"), 26-27 (opining that Claimant's right back injury was caused by his fall); Ex. C-10, at 18-19 (describing Claimant's right leg pain).

18

because the Board awarded interest. However, nothing in this decision bars the parties and tribunals from recalculating, if needed, the *amount* of statutory interest. Third, we affirm the Board's affirmance of the WCJ's calculation of Claimant's counsel's hourly rate based on the WCJ's personal knowledge. Regardless, the WCJ properly disregarded Claimant's unrebutted evidence because it did not establish the prevailing hourly rates for workers' compensation cases in northeastern Pennsylvania. Fourth, because the Board misapprehended the record, we reverse the Board's decision to the extent it held that Claimant did not suffer from a right neck injury. We remand to the Board with instructions to apply the appropriate legal framework set forth in *Froehly*, 139 A. at 730, *Gaffney*, 156 A.3d at 413, and *Steelers*, 224 A.3d at 447-48, which includes resolving whether an excursion director requires a seasonal overnight summer camp. At the Board's discretion, the Board may vacate the WCJ's decision in relevant part and remand to the WCJ to render explicit credibility findings and a conclusion of law on whether Claimant is a seasonal employee. *See* 77 P.S. § 834; *Daniels*, 828 A.2d at 1053.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jared Caldwell,            :
           Petitioner       :
                            :   No. 498 C.D. 2024
           v.               :
                            :
Towanda (Workers' Compensation    :
Appeal Board),                 :
           Respondent    :

## O R D E R

AND NOW, this 26th day of March, 2025, we VACATE in part, DISMISS in part, AFFIRM in part, and REVERSE in part the April 3, 2024 decision of the Workers' Compensation Appeal Board, and REMAND with instructions. We VACATE the decision of the Board to the extent it resolved Jared Caldwell's (Claimant) seasonal employee status. We REMAND to the Board with instructions to apply the appropriate legal framework set forth in *Froehly v. T.M. Harton Co.*, 139 A. 727 (Pa. 1927) and progeny, including *Pittsburgh Steelers Sports, Inc. v. Workers' Comp. Appeal Bd. (Trucks)*, 224 A.3d 442, 448 (Pa. Cmwlth. 2020) (*en banc*). The Board has the discretion to VACATE the decision of the workers' compensation judge (WCJ) to the extent it resolved Claimant's seasonal employee status and REMAND to the WCJ for credibility findings and a determination on Claimant's seasonal employee status. We REVERSE the Board to the extent it rejected Claimant's right neck injury. We DISMISS Claimant's statutory interest claim as moot. Nothing in our order bars the parties and tribunal from recalculating, if needed, the amount of statutory interest. We AFFIRM in all other respects.

Jurisdiction relinquished.

 

_____
**LORI A. DUMAS, Judge**